**Enrique MUNOZ and wife, Juanita Munoz, Appellants,**

v.

**The CITY OF PEARSALL, Appellee.**

**No. 04–01–00107–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 22, 2001.

John H. Patterson, Jr., Manuel P. Montez, San Antonio, for Appellants.

Dawn L. Carmody, Law Office of Dawn L. Carmody, San Antonio, for Appellee.

Sitting: RICKHOFF, STONE, and DUNCAN, JJ.

Opinion by STONE, Justice.

Enrique and Juanita Munoz appeal from the rendition of summary judgment for the City of Pearsall on their personal injury suit. We affirm.

## BACKGROUND

Early in the afternoon of November 17, 1995, a Pearsall police officer saw a railroad crossing arm—one that regulated westbound traffic on Comal Street—lying in the road; the officer removed it. About an hour later, another police officer saw that the eastbound crossing arm was stalled in a down position, although there was no train approaching. The Chief of Police ordered the officer to direct traffic through the intersection by hand. The officer stayed at the intersection for about two hours, then was ordered back on routine patrol when a strong storm moved into the area. At some point late in the afternoon, the eastbound arm that had been stalled in a down position was removed, ostensibly by the officer at the intersection or another city employee.

Enrique Munoz traveled through the intersection a half dozen times that day. He noticed the westbound arm was missing, saw the police officer regulating traffic, noticed the eastbound arm was also removed, and drove through the intersection twice after the officer had left. The second time he did so, at about 6 p.m. in a heavy rain, he collided with a train and was seriously injured.

Pearsall does not own the crossing or any of the mechanisms in place to regulate the crossing, and had no authority to repair the equipment. Although the police dispatcher sent several notices to Union Pacific, no railroad employee came to the site before the accident. Munoz sued the city and the railroad; he settled with Union Pacific. Munoz argues the city owed him a common-law duty after it assumed control of the intersection, and contends the city's immunity from suit is waived under any one of various sections of the Civil Practices and Remedies Code. The summary judgment does not specify the trial court's basis for the ruling.

## NEGLIGENCE AND IMMUNITY

In his first issue, Munoz contends the trial court erred when it did not find the city was negligent. He argues the city undertook an affirmative course of action

for the benefit of the public when it assumed control of the intersection, thus the city owed him a duty to exercise reasonable care so that he would not be injured. Texas has long recognized the rule that "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *City of Denton v. Page*, 701 S.W.2d 831, 836 (Tex. 1986). Munoz contends in his remaining points of error that the trial court erred in not finding that the city was liable under one of the available waivers of sovereign immunity. The city denies it was negligent, and characterizes its acts as falling squarely within the exception to waivers of immunity because the acts involved a method of providing police protection or were merely the failure to perform an act not required by law.

A defendant may move for a summary judgment based on an affirmative defense, such as immunity, and must prove conclusively all elements of the affirmative defense as a matter of law, such that there is no genuine issue of material fact. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). We take all evidence favorable to the non-movant as true, and indulge every reasonable inference from the evidence of the non-movant, and resolve any doubts in its favor. *See Montgomery*, 669 S.W.2d at 311.

Governmental entities are generally immune from tort liability. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). However, the Texas Tort Claims Act waives sovereign immunity for personal injuries caused by a condition or use of tangible personal or real property if the government would, were it a private citizen, be liable. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997).

The Act also provides that the State retains sovereign immunity in two situations. First, under section 101.056, the State preserves its immunity for an act "if the law leaves the performance or non-performance of the act to the discretion of the governmental unit." TEX. CIV. PRAC. & REM.CODE ANN. 101.056(2) (Vernon 1997). Thus, if the State's action is discretionary, it does not waive its immunity. *See State v. Burris*, 877 S.W.2d 298, 299 (Tex.1994). An act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994). Second, under section 101.060, the State does not waive its sovereign immunity for claims arising from "the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit." TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(a)(1) (Vernon 1997).

Even when certain decisions are discretionary, however, the State also waives immunity for "the duty to warn of special defects such as excavations or roadway obstructions." TEX. CIV. PRAC. & REM.CODE ANN. § 101.060(c) (Vernon 1997). Munoz contends the malfunctioning crossing arms and signals constituted a special defect. Whether a condition is an ordinary premise defect or a special defect is a question of law. *See State Dep't of Highways v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992). A special defect must be a condition of the same kind or class as an excavation or roadway obstruction and present "an unexpected and unusual danger to ordinary users of roadways." *Id.* at 238.

### PROXIMATE CAUSE

We are not entirely persuaded that the city's actions equated the undertaking

of a duty. Had the injury stemmed from the officer misdirecting Munoz's car into the path of the oncoming train, we would be more inclined to accept this theory. Here, however, the negligence alleged is not the undertaking of traffic control but rather the abandonment of it after a short period of time, before the railroad had remedied the problem. Even if we assume the city undertook a duty and breached it, and we further assume the city was liable for this breach of duty under one of the waivers of immunity discussed above, Munoz still cannot prevail because the city's acts or omissions were not a proximate cause of his injuries.

 Negligence requires a showing of proximate cause, which consists of both cause in fact and foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. *Id.* At some point in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation. *Id.* Legal cause is not established if the defendant's conduct or property does no more than furnish the condition that makes the injury possible. *Id.* at 776; *Bossley*, 968 S.W.2d at 343.

*Bossley* involved the death of a suicidal hospital patient. The patient escaped through unlocked doors. As he tried to elude pursuing hospital staff, he jumped into the path of a truck and was killed. *Id.* at 340–41. The supreme court rejected the argument that the patient's death was caused by the unlocked doors, stating, "The unlocked doors permitted [the patient's] escape but did not cause his death." *Id.* at 343. The court concluded the patient's death was too distant geographically, temporally, and causally from the open doors for liability to attach. *Id.*

Such is the case here. At the time Munoz collided with the train, he had crossed through the intersection at least five times. He knew the arms and signals were not functioning properly, that the arms were physically removed from the crossing, and that the police officer who had been directing traffic over the tracks had left the site. We hold the connection between the city's act of removing the eastbound arm, assuming it did, and its abandonment of the site, was too attenuated to Munoz's accident to constitute legal cause. As in *Bossley*, the city's acts, at most, did no more than furnish the condition making Munoz's injury possible.

We overrule all points of error.

We affirm the summary judgment.