v01867.ly1







NUMBER 13-01-867-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI



EMI MUSIC MEXICO, S.A. DE C.V., Appellant,
v.



HERMELINDA RODRIGUEZ, INDIVIDUALLY AND AS 

REPRESENTATIVE OF THE ESTATE OF SILVESTRE

RODRIGUEZ, JR., ET AL., Appellees.


On appeal from the 93rd District Court of Hidalgo County, Texas.


O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Yañez



 Appellant, EMI Music Mexico, S.A. de C.V. ("EMI Mexico"), a Mexican corporation, brings this accelerated interlocutory
appeal of an order denying its special appearance. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp.
2003); Tex. R. App. P. 28.1. The underlying lawsuit is a personal injury suit brought by appellees (1) for damages arising
out of a 1999 car crash in Mexico, which resulted in the deaths of several musicians and employees of a Texas musical
group called "Intocable." In two issues, EMI Mexico contends the trial court erred in denying its special appearance
because: (1) EMI Mexico's contacts with Texas are insufficient to support the exercise of general jurisdiction; and (2) EMI
Mexico's conduct in sending its employees into Texas to pick up members of the band and transport them into Mexico is
insufficient to support the exercise of specific jurisdiction. We affirm the trial court's ruling denying EMI Mexico's special
appearance. 

Background 


 EMI Mexico is a Mexican corporation that is an indirect wholly-owned subsidiary of EMI Group PLC, a United Kingdom
holding company. EMI Latin (2) is an unincorporated division of Capitol Records, Inc. ("Capitol"), a United States
corporation, which, like EMI Mexico, is also a wholly-owned subsidiary of EMI Group PLC. EMI Mexico's principal
office is in Mexico City; it has no offices outside Mexico. EMI Mexico is not a resident of Texas, is not authorized or
registered to do business in Texas, has no agents or representatives in Texas, owns no property in Texas, does not advertise
in Texas, has no employees who are residents of Texas, and maintains no bank accounts in Texas. 

 EMI Mexico enters into recording contracts with Mexican artists, and promotes and sells those artists' recordings in
Mexico. Outside Mexico, recordings of EMI Mexico artists are sold through a reciprocal license agreement with EMI
Music International Services Limited ("EMIMUS"), a United Kingdom company also owned by EMI Group PLC. Through
the agreement, called a Matrix Exchange Agreement ("MEA"), EMI Mexico has the exclusive right to manufacture,
distribute and sell in Mexico any recordings within the repertoire of any EMI company around the world. In exchange,
EMI Mexico: (1) grants to EMI Group an exclusive license to sell EMI Mexico repertoire everywhere in the world except
Mexico, and (2) agrees to pay a royalty to EMI Group for each recording of another EMI company's repertoire sold by EMI
Mexico in Mexico. Intocable has a recording contract with EMI Latin. Thus, under the MEA, EMI Mexico is licensed to
sell Intocable's recordings in Mexico. 

 When EMI Mexico organizes a promotional tour in Mexico by artists of another EMI repertoire owner, EMI Mexico is
responsible for arrangements and related expenses inside Mexico; travel costs in and out of Mexico, however, are borne by
the repertoire owner. 

 In January 1999, Lidia Salazar, then EMI Mexico's regional marketing manager, arranged a promotional tour for Intocable
in Mexico. Initially, EMI Latin made travel arrangements for the band by booking a commercial flight from Texas to
Mexico City. Several days later, however, the plans were changed because the band had not received the appropriate visas
for a direct international flight. Salazar therefore arranged for EMI Mexico's Monterrey office to rent two Suburbans in
Mexico to pick the band members up in McAllen and take them to Monterrey to catch a flight to Mexico City. The
circumstances regarding who initiated the backup travel plans are somewhat in dispute. (3) It is undisputed, however, that in
accordance with such plans, EMI Mexico assigned two of its employees, David Perez and Enrique Herrera, to drive the
Suburbans to McAllen and pick up the band and its equipment.

 On January 30, 1999, the night before the tour was to begin, the band played at a festival in McAllen. The concert and
follow-up activities lasted until the early morning hours. As planned, Perez and Herrera picked up the band members at the
McAllen Holidome hotel around 7:30 a.m. on January 31, 1999. (4) The band members and the road manager rode in the
Suburban driven by Perez; the Suburban driven by Herrera carried the band's equipment. At a checkpoint five miles south
of the border, the Suburban driven by Perez was briefly delayed. According to deposition testimony of Rene Martinez, one
of the band members, Perez began speeding following the delay to catch up with the other Suburban. While traveling
southbound on Highway 40 to Monterrey, near China, in Nuevo Leon, the right rear passenger tire of the Suburban driven
by Perez suffered a tread separation, and Perez was unable to retain control of the vehicle. The vehicle rolled over, and all
but one of the passengers was thrown from the vehicle. As a result of the crash, band members Sylvestre Rodriguez, Jose
Angel Farias, and road manager Jose Angel Gonzalez were killed. Band owners Ricardo Munoz and Rene Martinez, band
members Sergio Serna and Daniel Sanchez, and the driver, Perez, suffered injuries. 

 The band, the injured band members, and relatives of the deceased band members filed suit in Texas district court. EMI
Mexico was later added as a defendant. Appellees allege acts of negligence by EMI Mexico and its employee, Perez. EMI
Mexico filed a special appearance challenging the court's in personam jurisdiction. Following a hearing, the trial court
denied the special appearance. This interlocutory appeal followed. 

Standard of Review 


 We begin with the presumption that the court has jurisdiction over the parties. El Puerto de Liverpool v. Servi Mundo
Llantero S.A. de C.V., 82 S.W.3d 622, 628 (Tex. App.-Corpus Christi 2002, pet. dism'd w.o.j.) (citing Kawasaki Steel
Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985)). A nonresident defendant bears the burden of negating all bases of
personal jurisdiction to prevail in a special appearance. Id. (citing CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996)
(orig. proceeding)). 

 In considering an order granting or denying a special appearance, we review the trial court's resolution of disputed factual
issues under a factual sufficiency of the evidence standard, and review the trial court's conclusions of law de novo. Id.
(citations omitted). However, if a special appearance is based on undisputed or established facts, an appellate court instead
conducts a de novo review of the trial court's order granting a special appearance as a question of law. Id. In conducting its
review, the appellate court will consider all of the evidence that was before the trial court, including the pleadings, any
stipulations, affidavits and exhibits, the results of discovery, and any oral testimony. BHP de Venezuela, C.A. v. Casteig,
994 S.W.2d 321, 326 (Tex. App.-Corpus Christi 1999, pet. denied) (op. on reh'g). Where, as here, the record contains no
findings of fact or conclusions of law, all questions of fact are presumed to be found in support of the judgment. 
Valsangiacomo v. Am. Juice Import, Inc., 35 S.W.3d 201, 205 (Tex. App.-Corpus Christi 2000, no pet.). Because the
appellate record includes a reporter's record, however, these implied findings are not conclusive and an appellant may
challenge the sufficiency of the evidence on appeal. Id. 

Applicable Law


 In Texas, a party may contest personal jurisdiction by filing a special appearance. Tex. R. Civ. P. 120a(1). A special
appearance is determined by reference to the pleadings, any stipulations made by and between the parties, any affidavits
and attachments filed by the parties, discovery, and any oral testimony. Tex. R. Civ. P. 120a(3).

 A Texas court may assert personal jurisdiction over a nonresident defendant only (1) when the Texas long-arm statute
authorizes the exercise of jurisdiction and (2) when the exercise is consistent with the due process guarantees embodied in
both the United States and Texas constitutions. Ahadi v. Ahadi, 61 S.W.3d 714, 718 (Tex. App.-Corpus Christi 2001, pet.
denied) (citing CSR Ltd., 925 S.W.2d at 594). The long-arm statute authorizes jurisdiction over a nonresident defendant
"doing business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). (5) The Texas long-arm statute
allows a court to exercise personal jurisdiction over a nonresident defendant "as far as the federal constitutional
requirements of due process will allow." CSR Ltd., 925 S.W.2d at 594 (quoting Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P.L.C, 815 S.W.2d 223, 226 (Tex. 1991)). 

 Due process permits a state court to exercise personal jurisdiction over a defendant only if the defendant has some
minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play
and substantial justice. Dawson-Austin v. Austin, 968 S.W.2d 319, 326 (Tex. 1998); Liverpool, 82 S.W.3d at 629;Ahadi, 61
S.W.3d at 719. A nonresident that purposefully avails itself of the privileges and benefits of conducting business in Texas
is amenable to a suit in Texas. CSR Ltd., 925 S.W.2d at 594; Liverpool, 82 S.W.3d at 629; see Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475-76 (1985). However, a nonresident will not be subject to Texas jurisdiction based upon
mere random, fortuitous, or attenuated contacts. CSR Ltd., 925 S.W.2d at 595;Liverpool, 82 S.W.3d at 629. Minimum
contacts are particularly important when the defendant is from a different country because of the unique and onerous
burden placed on a party called upon to defend a suit in a foreign legal system. Liverpool, 82 S.W.3d at 629. 

 A defendant's contacts with a forum can give rise to specific or general jurisdiction. CSR Ltd., 925 S.W.2d at 594;
Liverpool, 82 S.W.3d at 627. Specific jurisdiction is established if the defendant's alleged liability arises from or is related
to an activity conducted within the forum. CSR Ltd., 925 S.W.2d at 595. The activity must be purposefully directed at
Texas so the defendant could foresee being haled into court here. Id. The number of the defendant's contacts is not
controlling; rather, the importance lies with the quality and nature of these contacts. Ahadi, 61 S.W.3d at 719. When
specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the
forum, and the litigation. Id.; Guardian Royal, 815 S.W.2d at 228. A single contact with Texas, of substantial quality and
nature, may be sufficient to establish specific jurisdiction when the cause of action arises from that contact. Ahadi, 61
S.W.3d at 719; Mem. Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.-Houston [14th Dist.] 1992,
no writ). A substantial connection must exist between the contact and the cause of action in the forum state. Ahadi, 61
S.W.3d at 719. The concept of "foreseeability" is implicit in the requirement that there be a "substantial connection"
between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully
directed toward Texas. Id. at 719-20. 

 When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant
and Texas. Liverpool, 82 S.W.3d at 627;CSR Ltd., 925 S.W.2d at 595. Such contacts would permit Texas courts to
exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities
conducted within the state. Liverpool, 82 S.W.3d at 627; CSR Ltd., 925 S.W.2d at 595; see Schlobohm v. Schapiro, 784
S.W.2d 355, 357 (Tex. 1990). General jurisdiction requires a showing of substantial activities by the nonresident defendant
in Texas, a more demanding minimum contacts analysis than for specific jurisdiction. Liverpool, 82 S.W.3d at 627; CSR
Ltd., 925 S.W.2d at 595. 

 Upon finding that the nonresident defendant purposefully established minimum contacts with the forum state, we must
then determine if the exercise of in personam jurisdiction comports with fair-play and substantial justice. Liverpool, 82
S.W.3d at 637-38 (citing Schlobohm, 784 S.W.2d at 358). In making this determination, we consider: (1) the burden on the
nonresident defendant; (2) Texas's interest in adjudicating the dispute; (3) the plaintiff's interest in getting convenient and
effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and
(5) the states' shared interest in furthering fundamental substantive social policies. Id.; see Guardian Royal, 815 S.W.2d at
228. When an international dispute is involved, the following factors should also be considered: (1) the unique burdens
placed upon the defendant who must defend itself in a foreign legal system; and (2) the procedural and substantive policies
of other nations whose interests are affected as well as the foreign government's interest in its foreign relation policies. 
Liverpool, 82 S.W.3d at 638; see Guardian Royal, 815 S.W.2d at 229. Consideration of the fair-play analysis is separate
and distinct from the minimum contacts issue, but it is unlikely the exercise of jurisdiction will fail the fair-play analysis
because the minimum contacts analysis encompasses so many considerations of fairness. Liverpool, 82 S.W.3d at 638; see
Ahadi, 61 S.W.3d at 721; Guardian Royal, 815 S.W.2d at 231). 

Specific Jurisdiction


 In this case, appellees asserted the trial court had both specific and general jurisdiction over EMI Mexico. We first address
EMI Mexico's challenge to the exercise of specific jurisdiction. 

 As noted, specific jurisdiction pertains to causes of action arising out of or relating to the defendant's contacts with Texas. 
Guardian Royal, 815 S.W.2d at 230. The minimum contacts prong for specific jurisdiction can be satisfied by a single act
if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus
invoking the benefit and protection of its laws." Guyton v. Pronav Ship Mgmt., Inc., 139 F. Supp. 2d 815, 818 (S.D. Tex.
2001) (citing Burger King,471 U.S. at 475).

 When reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial
court should examine only the necessary jurisdictional facts and should not reach the merits of the case. Arterbury v. Am.
Bank & Trust Co., 553 S.W.2d 943, 948 (Tex. Civ. App.-Texarkana 1977, no writ); see also Portland Sav. & Loan Ass'n v.
Bernstein, 716 S.W.2d 532, 535 (Tex. App.-Corpus Christi 1985, writ ref'd n.r.e.), overruled on other grounds by,
Dawson-Austin, 968 S.W.2d at 328. Specific jurisdiction over a tort defendant is satisfied when "the defendant, personally
or through an agent, is the author of an act or omission within the forum state, and the petition states a claim in tort arising
from such conduct." Baldwin v. Household Int'l, Inc., 36 S.W.3d 273, 277 (Tex. App.-Houston [14th Dist.] 2001, no pet.). 
The act or omission within the state is a sufficient basis for the exercise of jurisdiction to determine whether or not the act
or omission gives rise to liability in tort. Id. (citing Bernstein, 716 S.W.2d at 535). 

 Where an individual commits a tort in whole or in part in Texas, he satisfies the jurisdictional requirements of the Texas
long-arm statute. Tex. Civ. Prac. & Rem. Code Ann. §17.042 (Vernon 1997); Ring Power Sys. v. Int'l de Comercio y
Consultoria, S.A., 39 S.W.3d 350, 353 (Tex. App.-Houston [14th Dist.] 2001, no pet.). 

 Here, EMI Mexico entered Texas to pick up and transport the band members to Mexico, and is being sued for damages
arising out of an accident that occurred during that transportation. The pleadings show appellees alleged various acts of
negligence by EMI Mexico, including failure to provide appellees with safe transportation, negligent hiring and training of
Perez, and negligent entrustment of a vehicle to Perez. Appellees allege that at the time EMI Mexico negligently entrusted
a vehicle to Perez, he was an "incompetent and unfit" driver and that he was "untrained, unlicensed, overworked,
exhausted, and fatigued." Appellees further allege that EMI Mexico failed to provide safe transportation for the band
members "from Hidalgo County, Texas into Mexico." They further allege EMI Mexico knew or should have known that as
an incompetent and unfit driver, Perez would create an unreasonable risk of danger "on the public streets and highways of
Texas and Mexico at the time of the [negligent] entrustment."

 In support of allegations that Perez was an incompetent and unfit driver, appellees offered deposition testimony of various
witnesses, including Alan Baxter, the manager of a singer who performed at a concert in Monterrey on the evening of
January 30, 1999. Baxter testified he saw Perez drinking beer at a party in Monterrey on the afternoon of the 30th and later
that evening, at the concert. He testified Perez did not leave the concert until around 3:00 a.m. on the 31st. Paul Roland
Olivarri, who works with Baxter, also testified he saw Perez drinking at the party and concert, and that Perez did not leave
the concert until around 2:00 or 3:00 a.m. Sergio Serna, a member of the band, testified that although Perez was supposed
to be at the McAllen Holidome Hotel at 7:00 a.m., he was not there, but was found a short time later at a different hotel,
asleep in the Suburban. Serna testified that after loading up the band members and leaving the hotel, Perez ran a red light in
McAllen. Several of the band members reminded him he was "not in Mexico," and that it was necessary to stop at red
lights. Also, while still in McAllen, when the other Suburban stopped to get gas, Perez stopped in the middle of the
roadway, without pulling over; again, the band members told him to move out of the roadway. Serna described Perez as a
"reckless, careless" and very aggressive driver. According to Serna, on prior occasions when Perez had been assigned to
drive the band in Monterrey, he had engaged in reckless driving, and the band had complained about his driving. 

 Rene Martinez, another member of the band, similarly testified that while still in McAllen, Perez ran a red light and
stopped in the middle of the road, without pulling over to the side; on both occasions, the band told him he could be
ticketed for such conduct. Martinez testified that Perez was wearing sunglasses, even though it was not sunny. He stated
that Alan Baxter later told him Perez was seen drinking in Monterrey until 4:00 a.m. the morning he picked them up. 
Martinez testified that after the Suburban driven by Perez was briefly delayed at the checkpoint, Perez began speeding to
catch up with the other Suburban. Martinez said he and others told Perez to slow down. 

 EMI Mexico argues it is not subject to specific jurisdiction because even though the long-arm statute permits the exercise
of jurisdiction over a nonresident defendant who commits a tort in whole or in part in Texas, the alleged torts in this case
were committed wholly in Mexico. It further argues jurisdiction cannot be predicated on any contract to be performed in
whole or in part in Texas because there was no contract between EMI Mexico and the band regarding EMI Mexico's
transportation of the band from Texas into Mexico. EMI Mexico argues it had no duty to provide transportation to the
band, and that it came to Texas and provided transportation only because of the band's last-minute request that it do so. 

 Appellees cite Chew v. Dietrich, 143 F.3d 24, 30 (2d Cir. 1998), in support of their position that the fact the injury
occurred outside Texas does not, by itself, preclude a finding of specific jurisdiction. In Chew, the court found specific
jurisdiction based on a nonresident defendant's transportation of people or goods from the forum state, even though the
injury occurred outside the forum state. See id. Appellees also argue the exercise of specific jurisdiction is proper in Texas
when any element of a tort, including breach of duty in a negligence action, takes place in the forum state. Appellees
contend that by sending Perez, a fatigued and unfit driver, into Texas to pick up the band, EMI Mexico breached its duty in
Texas to provide appellees with safe transportation, and thus committed part of a tort in Texas. 

 Appellees also argue EMI Mexico's attempt to distinguish Chew and other transportation cases (6) on the basis that those
cases involved contracts is unpersuasive. Appellees contend an agreement to transport people is not required to be in
writing to be an enforceable contract, and that the band's acceptance of EMI Mexico's offer to arrange promotional events
and provide transportation is supported by consideration. 

 Appellees' claims arise out of the accident which resulted from EMI Mexico's alleged negligence in sending Perez, an
allegedly reckless, incompetent, and exhausted driver, into Texas to pick up the band. As noted, appellees also allege that
EMI Mexico's breach of its duty to provide safe transportation occurred in Texas. 

 The elements of a negligence cause of action are: (1) a legal duty; (2) breach of that duty; and (3) damages proximately
resulting from the breach. San Benito Bank & Trust Co. v. Landair Travels, 31 S.W.3d 312, 317 (Tex. App.-Corpus Christi
2000, no pet.) (citing Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998)). 

 To successfully prosecute a claim of negligent hiring, supervision, or retention, a plaintiff is required to show that: (1) the
employer owed a legal duty to protect third parties from the employee's actions; and (2) the third party sustained damages
proximately caused by the employer's breach of that legal duty. See Houser v. Smith, 968 S.W.2d 542, 544 (Tex.
App.-Austin 1998, no pet.); see also Estate of Arrington v. Fields, 578 S.W.2d 173, 178 (Tex. Civ. App.-Tyler 1979, writ
ref'd n.r.e.) (holding basis of responsibility for negligent hiring is master's own negligence in hiring or retaining
incompetent servant whom master knows or by exercise of reasonable care should have known was incompetent or unfit,
thereby creating unreasonable risk of harm to others). Proof of negligent entrustment requires: (1) entrustment of a vehicle
by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be
unlicensed, incompetent, or reckless; (4) the driver's negligence on the occasion in question; (5) proximately caused the
accident. Williams v. Steves Indus., Inc.,699 S.W.2d 570, 571 (Tex. 1985). 

 Texas courts have recognized that a duty to use reasonable care may arise when a person undertakes to provide services to
another, either gratuitously or for compensation. Torrington Co. v. Stutzman, 46 S.W.3d 829, 837 (Tex. 2000). One who
owes no legal duty, but who gratuitously acts, assumes a duty to act with reasonable care so as to prevent harm to that
person or to others. Wal-Mart Stores, Inc. v. Lane, 31 S.W.3d 282, 293 (Tex. App.-Corpus Christi 2000, pet. denied); see
also Munoz v. City of Pearsall, 64 S.W.3d 119, 122 (Tex. App.-San Antonio 2001, no pet.). 

 EMI Mexico argues that it came to Texas to provide transportation to the band only because the band requested that it do
so. It also argues that its mere "footfall" into Texas is insufficient to support jurisdiction because its contacts with Texas
were "incidental and immaterial" to the events which gave rise to appellees' claims and the band's location in Texas was
entirely incidental to the agreement to travel into Mexico.

 We are unpersuaded by EMI Mexico's argument that because it came to Texas only as an accommodation to the band, its
contact with Texas is insufficient to support jurisdiction. A similar argument was rejected in Summit Mach. Tool Mfg.
Corp. v. Warren Transp., 920 F. Supp. 722, 725-26 (S.D. Tex. 1996), where a Mexican trucking company that entered
Texas to deliver equipment was found to have sufficient contact with Texas to support the exercise of specific jurisdiction,
even though the company argued it came into Texas only as an accommodation to and at the request of the Texas
equipment yard owner where delivery was made. The court noted that "[w]hether or not [the defendant] was 'enticed' to
come to Texas, it nevertheless freely did so, presumably finding it economically advantageous." Id. at 726. Because the
plaintiff's claims arose from the defendant's contacts with Texas, the court found the exercise of jurisdiction was not
contrary to due process. Id. 

 Here, the evidence shows EMI Mexico purposefully directed its activities toward Texas by sending its employee, Perez, to
Texas to pick up the band. Appellees' claims arise out of EMI Mexico's alleged breach in Texas of its duty to provide safe
transportation by sending an allegedly reckless, unfit, and exhausted driver to pick up the band. 

 EMI Mexico contends appellees' claims do not "arise out of or relate to" EMI Mexico's contacts with Texas because the
test requires "virtually a direct link" between the claim and the contacts, a relationship analogous to the issue of proximate
cause in tort law. Appellees note a split in the federal circuit courts on the standard to be applied in determining if a tort
claim "relates" to the defendant's contacts within a state; some courts require that conduct within the state must be a
proximate cause for the plaintiff's injury, while others hold it sufficient if the conduct within the state is a "but for" cause of
the plaintiff's injury. See Chew, 143 F.3d at 29 (citing cases). Appellees further note that some state courts have adopted a
"discernible relationship" or "substantial connection" standard between contacts and claims. Appellees contend this Court
need not decide which test to apply because the facts in this case satisfy even the most rigorous standard. This Court,
however, has adopted the "substantial connection" standard and has held that a single Texas contact can support the
exercise of specific jurisdiction if the suit arises out of that contact: 

A substantial connection must exist between the contact and the cause of action in the forum state. The concept of
"foreseeability" is implicit in the requirement that there be a "substantial connection" between the nonresident defendant
and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. 

 

Ahadi, 61 S.W.3d at 719-20 (citations omitted); see also, J & J Marine, Inc. v. Le, 982 S.W.2d 918, 923 (Tex. App.-Corpus
Christi 1998, no pet.). 

 If a nonresident defendant undertakes to provide transportation services to a forum resident, as EMI Mexico did here, he
assumes a duty to act with reasonable care in doing so. See Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983)
("[o]ne who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a
duty to act and must do so with reasonable care."). If the defendant breaches such a duty by failing to act with reasonable
care, there is a foreseeable consequence of injury to the forum resident. See Ahadi, 61 S.W.3d at 720. We hold that a
substantial connection exists between EMI Mexico's contact with Texas and appellees' causes of action, as required for the
exercise of specific jurisdiction. 

 

Fair Play and Substantial Justice


 We now determine whether the trial court's exercise of personal jurisdiction over EMI Mexico comports with traditional
notions of fair play and substantial justice. Guardian Royal, 815 S.W.2d at 228. While conducting this inquiry, we bear in
mind that only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the
nonresident defendant has purposefully established minimum contacts with the state. Id. at 231. With this standard in
place, we apply the relevant fair play and substantial justice factors, which are: (1) the nonresident's burden; (2) the forum
state's interest in adjudicating the dispute; and (3) the plaintiff's interest in obtaining convenient and effective relief. Id. (7) 

 EMI Mexico asserts that its status as an international defendant is a determinative factor in the fairness analysis. We
disagree. EMI Mexico does not explain how it would be burdened by litigating this case in Texas, except to note that the
injuries occurred in Mexico and that many of the witnesses are in Mexico. Appellees note that many of EMI Mexico's
witnesses have testified by deposition in Mexico. Moreover, distance alone is not ordinarily sufficient to defeat jurisdiction
as "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a
State where he engages in economic activity." See id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). 
Although EMI Mexico's principal office is located in Mexico City, it also has offices in Monterrey, which is a two to three
hour drive from McAllen. We conclude that any inconvenience EMI Mexico may suffer defending this suit in Texas would
not amount to a denial of due process. 

 Texas has a substantial interest in adjudicating this matter because all but one of the members of the band were Texas
residents at the time of the accident and the band itself, Intocable, L.L.C., is a Texas company. The evidence shows EMI
Mexico officials traveled to Texas six to eight times a year to meet musicians in Texas to coordinate promotional events in
Mexico. On some of these occasions, EMI Mexico officials picked up musicians in Texas and provided transportation into
Mexico for the promotional events. Texas has a strong "interest in providing effective means of redress of its residents."
McGee, 355 U.S. at 223. We find there is sufficient evidence to support the trial court's conclusion that Texas has an
interest in adjudicating this dispute. 

 The appellees' interests in convenient and effective relief also weigh in favor of finding that the exercise of jurisdiction
over EMI Mexico is proper. Appellees note Texas may be the only forum in which the entire dispute can be resolved in a
single proceeding because some plaintiffs have also sued other entities and individuals that are subject to jurisdiction in
Texas and that have filed answers in the lawsuit. Adjudication of the dispute in Texas thus allows the plaintiffs to obtain
relief against all the parties in a single proceeding. 

 Taking into account all of the factors involved in a fairness analysis, we hold that the exercise of jurisdiction over EMI
Mexico by a Texas court does not offend traditional notions of fair play and substantial justice. Accordingly, we overrule
appellant's second issue and AFFIRM the trial court's denial of EMI Mexico's special appearance. 

 In light of our disposition of this issue, we need not address EMI Mexico's remaining issue. See Tex. R. App. P. 47.1. 

 

LINDA REYNA YAÑEZ

Justice



Opinion delivered and filed this the

30th day of January, 2003. 

1. Appellees include surviving members of a Texas musical group called "Intocable," and relatives of the deceased band
members and its employees. Intocable is a Texas limited liability company. At the time of the accident, five of Intocable's
six members were Texas residents. 

2. EMI Latin is also a defendant, but is not involved in this appeal. 

3. In her affidavit, Salazar states that EMI Latin arranged for the revised itinerary providing for the band's commercial flight
from Monterrey to Mexico City. She further states she made arrangements for the ground transportation from McAllen to
Monterrey in response to a call from Intocable's agent, Servando Cano, who asked her to contact the band's business
manager, Nikki Sandoval, for the purpose of coordinating the ground travel plans between McAllen and Monterrey. In her
deposition testimony, Sandoval stated she was unsure whose idea it was to arrange for the band to travel to Monterrey in
the Suburbans, but that she did not suggest the arrangements and believed that the plan "might have been" Salazar's idea. 
Sandoval also stated that J.J. Cheng of EMI Latin's office was advised of the revised travel plans in a telephone conference
call. Rene Martinez, a member of the band, stated in deposition testimony that because the work visas had not arrived,
Sandoval called EMI Latin's California office to request the flight change and that she also coordinated travel arrangements
with EMI Mexico.

4. Herrera met the band as scheduled around 7:00 a.m. at the McAllen Holidome. Perez, however, was not there, and was
found by one of the band members asleep in the other Suburban at the McAllen Sheraton hotel. 

5. The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in
Texas. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). In pertinent part, the Texas Civil Practice and
Remedies Code characterizes nonresident activity as "doing business" in Texas where the nonresident:

 (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in
this state; 

 (2) commits a tort in whole or in part in this state; 

 (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this
state; or 

 (4) performs any other acts that may constitute doing business. 



Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).

6. See Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial America, S.A. de C.V.,978 S.W.2d 716,
718-20 (Tex. App.-Austin 1998, no pet.). 

7. The fourth and fifth factors, "the interstate judicial system's interest in obtaining the most efficient resolution of
controversies [and] the shared interests of the several states in furthering fundamental substantive social policies," need not
be considered in cases involving a foreign defendant. Guardian Royal Exchange Assurance Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 232 n.17 (Tex. 1991).