COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





ZINC NACIONAL, S.A.,


 Appellant,


v.


BOUCHE TRUCKING, INC.,


 Appellee,


v. 


JORGE ARRELLANO,


 Party In Interest/Plaintiff.

 §


§


 


§


 


§


 


§


 


§



§


§


§



No. 08-07-00314-CV



Appeal from


 34th District Court


of El Paso County, Texas


(TC # 2001-4505)




O P I N I O N



 Zinc Nacional, S.A. brings this interlocutory appeal from the denial of a special appearance. 
At issue is whether a Mexican company that trucks its product into the United States at Laredo,
Texas for transport to New Mexico may be sued in Texas for negligence in loading the trailer at its
facility in Monterrey, Mexico which allegedly caused an accident that injured a Texas driver. For
the reasons that follow, we affirm. 

FACTUAL SUMMARY


 Zinc Nacional is a Mexican corporation with its principal place of business in Monterrey,
Mexico. The company manufactures paper and paper-related products for worldwide distribution. 
It does not maintain an office in Texas, employ anyone in Texas, advertise in Texas, or market its
products in Texas. Zinc has some 260 customers worldwide, thirty of which are located in the
United States, and three or four of which are located in Texas. It also receives raw materials from
suppliers in Texas. Zinc contracts with C.H. Robinson de Mexico, a Mexican entity, for the
transportation of its products throughout Mexico and into the United States.

 Zinc focuses on selling its products to drywall manufacturing plants located in New Mexico,
Nevada, and Florida. American Gypsum, located in Albuquerque, New Mexico, has been a customer
of Zinc's grey-back paper products for the past seven years. Zinc ships American Gypsum
approximately 300 metric tons of product per month. On average, it ships two to three loads a week. 
 On December 13, 1999, Zinc loaded eight rolls of grey-back paper onto a trailer in
Monterrey, Mexico, pursuant to a purchase order from American Gypsum. (1) The trailer was provided
by C.H. Robinson. C.H. Robinson trucked the load from Monterrey, Mexico, to Laredo, Texas. At
that point, the customary procedure was to deliver the load to a customs agent in order to cross the
shipment into the United States. In this case, the customs agent was Juan Alvarado Brokerage. The
purchase order specified that the shipping terms were "F.O.B. Mid-Bridge Laredo." This ensures,
in effect, that the transfer of title took place in Nuevo Laredo, Tamaulipas, Mexico. The shipment
was then picked up in Laredo by Bouche Trucking, Inc.--a Texas corporation--which had been
subcontracted by C.H. Robinson to transport the products to New Mexico.

 Jorge Arrellano is a long haul truck driver for Bouche. On December 14, 1999, Arrellano
was instructed to pick up a load containing numerous rolls of grey-back paper for transport to
American Gypsum in Albuquerque. During transport, the rolls shifted causing the trailer rig to
overturn in Texas on U.S. 55 North. Arrellano sued Bouche, alleging it was negligent in: (1) failing
to properly load the rolls of paper onto the trailer, (2) failing to properly secure the rolls of paper onto
the trailer, and (3) failing to properly hire and/or train its personnel and/or its agents on the proper
manner of loading. Bouche then filed a third party petition against Zinc Nacional seeking indemnity
and contribution since Zinc employees actually loaded the paper rolls onto the trailer. (2) Zinc filed
a special appearance which the trial court denied. This interlocutory appeal follows.

STANDARD OF REVIEW


 The plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident
defendant within the personal jurisdiction of a Texas court. Retamco Operating, Inc. v. Republic
Drilling Co., 278 S.W.3d 333 (Tex. 2009); BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 793 (Tex.2002). The non-resident defendant then assumes the burden of negating all bases of
jurisdiction in those allegations. Id.

 Whether a trial court has personal jurisdiction over a defendant is a question of law, which
we review de novo. Retamco, 278 S.W.3d at 337. However, the trial court frequently must resolve
questions of fact before deciding the question of jurisdiction. BMC Software, 83 S.W.3d 794. If a
trial court enters an order denying a special appearance, and the trial court issues findings of fact and
conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency
grounds. Id. Where, as here, the trial court does not issue findings, all fact findings necessary to
support the judgment and supported by the evidence are implied. Id. at 795.

LONG-ARM JURISDICTION


 Texas courts may assert in personam jurisdiction over a non-resident if (1) the Texas long-arm statute (3) authorizes the jurisdiction, and (2) the exercise of jurisdiction is consistent with federal
and state constitutional due process guarantees. Retamco, 278 S.W.3d at 337, citing Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); Schlobohm v. Schapiro, 784 S.W.2d 355,
356 (Tex. 1990). The long-arm statute permits Texas courts to exercise jurisdiction over non-resident defendants that do business in Texas, and the statute contains a non-exclusive list of
activities that constitute "doing business". Tex.Civ.Prac.&Rem.Code Ann. § 17.042 (Vernon
2008). A non-resident does business in Texas if it commits a tort in whole or in part in the state. 
Tex.Civ.Prac.&Rem.Code Ann. § 17.042(2). A tort is committed where the resulting injury
occurs. Hupp v. Siroflex of America, Inc., 848 F.Supp. 744 (S.D.Tex. 1994), citing Union Carbide
Corp. v. UGI Corp., 731 F.2d 1186, 1189-90 (5th Cir. 1984).

 Section 17.042's broad language extends personal jurisdiction "as far as the federal
constitutional requirements of due process will permit." BMC Software, 83 S.W.3d at 795, quoting
U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977). Consequently, we consider
whether it is consistent with federal constitutional requirements of due process for Texas courts to
assert in personam jurisdiction. See Guardian Royal Exchange Assurance, Ltd. v. English China
Clays, 815 S.W.2d 223, 226 (Tex. 1991). We rely on both federal and Texas decisions in
determining whether a non-resident defendant has met its burden to negate all bases of jurisdiction. 
BMC Software, 83 S.W.3d at 795.

MINIMUM CONTACTS


 The United States Supreme Court divides the due process requirement into two parts: (1)
whether the non-resident defendant has purposefully established minimum contacts with the forum
state, and if so, (2) whether the exercise of jurisdiction comports with traditional notions of fair play
and substantial justice. BMC Software, 83 S.W.3d at 795, citing International Shoe Co. v.
Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed 95 (1945). We focus on the defendant's
activities and expectations when deciding whether it is proper to bring the defendant before a Texas
court. Retamco, 278 S.W.3d at 338. A defendant establishes minimum contacts when it
"purposefully avails itself of the privilege of conducting activities within the forum state, thus
invoking the benefits and protections of its laws." Id. Personal jurisdiction exists if the non-resident's minimum contacts give rise to either specific jurisdiction or general jurisdiction. Id.; BMC
Software, 83 S.W.3d at 795-96, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.
408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). For a court to exercise specific jurisdiction
over a non-resident defendant, two requirements must be met: (1) the defendant's contacts with the
forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. 
American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002). One
exception to the "arising from" requirement is the stream of commerce doctrine. Asahi Metal
Indusry Co., Ltd. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The
minimum contacts analysis for specific jurisdiction focuses on the relationship between the
defendant, the forum, and the litigation. Helicopteros, 466 U.S. at 414, 104 S.Ct. 1872; Michiana
Easy Livin' Country Inc., 168 S.W.3d at 790. In contrast, general jurisdiction exists when a
defendant's contacts in a forum are continuous and systematic so that the forum may exercise
personal jurisdiction over the defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. BMC Software, 83 S.W.3d at 796. We are asked to
address only specific jurisdiction here. 

Purposeful Availment


 Courts consider three issues in deciding whether a defendant purposefully availed itself of
the privilege of conducting business in Texas:

 First, only the defendant's contacts with the forum are relevant, not the unilateral
activity of another party or a third person. Second, the contacts relied upon must be
purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out
beyond one state and create continuing relationships and obligations with citizens of
another state are subject to the jurisdiction of the latter in suits based on their
activities. Finally, the defendant must seek some benefit, advantage or profit by
availing itself of the jurisdiction.


Retamco, 278 S.W.3d at 339, citing Moki Mac, 221 S.W.3d at 575. In concluding that defendant
Republic Drilling Company's contacts with Texas were purposeful, the court recognized that while
Republic may not have actually entered the state to facilitate the transaction, "[j]urisdiction . . . may
not be avoided merely because the defendant did not physically enter the forum state." Retamco, 278
S.W.3d at 339, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85
L.Ed.2d 528 (1985).

 We conclude that Zinc's contacts with Texas were purposeful. Zinc deliberately structured
its business to use Texas ports of entry and Texas roads and highways to transport its products to
New Mexico on a regular basis. There is also an adequate relationship between Zinc, the forum, and
the litigation. This case does not involve a third party purchaser in New Mexico who trucked Zinc's
product through Texas without its knowledge. Zinc purposefully transferred title to its load in the
middle of the bridge at Laredo, but every shipment bound for the United States crossed at the Laredo
point of entry and was trucked through the State of Texas utilizing Texas ports and highways. (4) The
trial court took judicial notice that if a product crosses the Mexican border into Laredo, it necessarily
must pass through Texas to reach New Mexico:

 [S]omething that enters Laredo, Texas, couldn't proceed anywhere without going
through Texas. I mean, there is nowhere else. You have got to go at least several
hundred miles through Texas in some direction, even if they're going to go to another
final destination. Like, in this case they're going to New Mexico, so there would be
a period of time that it would be going through Texas.


And his perception is accurate. Zinc is based in Monterrey, the capitol of the State of Nuevo Leon. 
The City of Monterrey advertises at www.teamnafta.com:

 Transportation


 The State of Nuevo Leon has an excellent 4,588 miles highway system. To the north,
it connects with Laredo, TX, which is the closest border crossing point from
Monterrey leading to the vast North American market. Highways are in excellent
condition, tough [sic] they experience some heavy traffic, in particular Federal
Highway 57. 


 The recently opened International Bridge of Colombia provides quick access to the
U.S. About 286,015 loaded trucks cross northbound to the U.S. every year with a
similar number crossing southbound to Mexico. (Source: State of Nuevo Leon
Government).


NAFTA, the North American Free Trade Agreement, allows the commercial transactions but does
not control the method of transfer. Zinc controls the loading of the shipment and the method of
transfer. Zinc picked a Texas port of entry, the closest port of entry. Laredo, one of 24 Texas ports
of entry, is only 150 miles from Monterrey. New Mexico has three ports of entry--Santa Teresa,
Columbus, and Antelope Wells. Zinc could have chosen to truck its product across Mexican
highways for entry at Santa Teresa [located at the Texas/New Mexico/Mexico border], which is 560
miles from Monterrey. In short, it opted for the closest and quickest route across the best roadways. 
In so doing, it availed itself of Texas benefits.

Arising From or Related To


 We turn now to the second prong of specific jurisdiction. Zinc first directs our attention to
World-Wide Volksvagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). 
There, the United States Supreme Court considered whether "an Oklahoma court may exercise in
personam jurisdiction over a nonresident automobile retailer and its wholesale distributor in a
products-liability action, when the defendants' only connection with Oklahoma is the fact that an
automobile sold in New York to New York residents became involved in an accident in Oklahoma." 
The plaintiffs, residents of New York, purchased an automobile from a New York dealership. Id.
at 287-88. The car was involved in an accident in Oklahoma two years later. Id. at 288. The
plaintiffs brought a products liability suit against several defendants in Oklahoma, including World-Wide Volksvagen Corp., a regional distributor of the car in New York. Id. The court declined
jurisdiction because the isolated incident, although foreseeable, was not sufficient to confer personal
jurisdiction. Id. at 295-297. It is the defendant's conduct and its connection with the forum state
that determine whether the defendant should reasonably anticipate being haled into court. Id. Citing
World-Wide, Zinc argues that while a trucking accident might be foreseeable, it has purposefully
structured its transactions so as neither to profit from the forum's laws nor be subject to its
jurisdiction. In other words, it delivers its truck loads at mid-bridge Laredo to avoid being haled into
Texas courts. As we have noted, however, the general manager testified that the trailer is delivered
to the customs broker at Laredo, Texas.

 Arrellano responds that Zinc delivered its paper products into the stream of commerce. This
was the issue in Asahi: Did the defendant's awareness that the components it manufactured, sold,
and delivered outside the United States would reach the forum state in the stream of commerce
constitute minimum contacts such that the exercise of jurisdiction would not offend "traditional
notions of fair play and substantial justice"? Asahi, 480 U.S. at 105. There, the plaintiff filed a
products liability action in California. Id. at 106. Asahi, the manufacturer, was joined in an
indemnification claim. Id. The Supreme Court discussed the stream of commerce theory, but issued
a plurality opinion with two differing views. Id. at 111-117. Justice O'Connor concluded that a non-resident defendant must specifically intend to serve the market in the forum state by, among other
things, "designing the product for the market in the forum State, advertising in the forum State,
establishing channels for providing regular advice to customers in the forum State, or marketing the
product through a distributor who has agreed to serve as the sales agent in the forum State." Id. at
111-12 (O'Connor, J.). Texas has adopted Justice O'Connor's view of the stream of commerce
doctrine. See Michiana Easy Livin' Country Inc. v. Holten, 168 S.W.3d 777, 786 (Tex. 2005). 

 In Michiana, the plaintiff initiated a telephone call with an Indiana company that sold
recreational vehicles, hoping to get a better price that what was offered locally. He purchased an RV
that was constructed and equipped outside Texas. It was paid for outside Texas. And it was shipped
to Texas at the plaintiff's request and entirely at his expense. In rejecting the application of the
stream of commerce doctrine, the majority noted that Michiana did not place large numbers of RVs
in a stream of commerce flowing to Texas, adding that stream-of-commerce jurisdiction requires a
stream, not a dribble. Michiana did not design, advertise, or distribute RVs in Texas. The court 
concluded that the Fourteenth Amendment does not permit Texas to exercise personal jurisdiction
over a foreign manufacturer merely because it knew its product would be shipped here. Michiana,
168 S.W.3d at 784.

 Zinc relies upon Micheana in support of its argument that it must have intended that the
specific product be targeted at Texas, and it had no such intent since no grey-back paper is sold in
Texas. But we are persuaded by the words of the unanimous opinion in Retamco: "an out-of-state
company with no physical ties to Texas still has minimum contacts with Texas when it is clear the
company purposefully directed its activities toward Texas." Retamco, 278 S.W.3d at 340.

 Zinc also argues that even if it is foreseeable that a truck might be involved in an accident
in Texas, foreseeability is not enough. See World-Wide Volksvagen Corp., 444 U.S. at 295. It also
contends that just like in Asahi, it has not specifically intended to serve the market in Texas just by
shipping its product through Texas. Finally, Zinc maintains that it has not met the stream of
commerce theory requiring additional conduct such as "designing the product for the market in the
forum State, advertising in the forum State, establishing channels for providing regular advice to
customers in the forum State, or marketing the product through a distributor who has agreed to serve
as the sales agent in the forum State." Asahi, 480 U.S. at 112.

 We find an important distinction between both World-Wide Volksvagen Corp. and Asahi and
the facts of this case. Both World-Wide and Asahi were product liability cases. Here, there is a
negligence claim relating to the improper loading of certain rolls of paper onto a trailer. There is no
claim that Zinc improperly or defectively manufactured the grey-back paper, put the paper into the
stream of commerce, and then the paper caused injury to the plaintiff. Instead, the allegation is that
Zinc negligently loaded the product onto a trailer, and that same load--while on its way to a customer
in New Mexico--caused an accident in Texas. Zinc did not merely foresee the possibility of its
product passing through Texas, it purposefully loaded its product knowing with certainty that the
trailer it loaded would pass through Texas. Our conclusion is strengthened by the recent Texas
Supreme Court decision in Retamco, where the court mandated consideration of the claims involved
in the litigation to determine the operative facts. Retamco, 278 S.W.3d at 340. There, as here, 
"[t]hese contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in
Texas." Id. at 341. We conclude that the cause of action--the alleged negligent loading of the
product--arose from an accident involving a truck that Zinc loaded, knowing it would enter the
United States and travel across the state of Texas. 

FAIR PLAY AND SUBSTANTIAL JUSTICE 


 Having concluded that Zinc purposefully established minimum contacts with Texas, we must
also determine whether the assertion of personal jurisdiction comports with traditional notions of fair
play and substantial justice. See Guardian Royal Exchange Assurance, Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). In deciding this issue, we consider the following factors
when appropriate: (1) the burden on the defendant; (2) the interests of the forum state in
adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4)
the interstate judicial system's interest in obtaining the most efficient resolution of controversies;
and (5) the shared interest of the several states in furthering fundamental substantive social policies. 
Guardian Royal, 815 S.W.2d at 231. The fourth and fifth factors need not be considered in cases
involving a foreign defendant. Guardian Royal, 815 S.W.2d at 232. We are mindful, however, that
only in rare cases will exercise of jurisdiction not comport with fair play and substantial justice when
the non-resident defendant has purposefully established minimum contacts with the forum state. Id. 
It is incumbent upon the defendant to present "a compelling case that the presence of some other
considerations would render jurisdiction unreasonable." Id. at 233, quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528, 543-44 (1985). 

 In EMI Music Mexico, S.A. de C.V. v. Rodriguez, the defendant claimed that its status as an
international defendant was a determinative factor in the fairness analysis. 97 S.W.3d 847, 860
(Tex.App.--Corpus Christi 2003, no pet.). The court disagreed, despite the defendant's argument
that the injuries occurred in Mexico and that many of witnesses were in Mexico. Id. The court
stated that distance alone is not ordinarily sufficient to defeat jurisdiction as "modern transportation
and communication have made it much less burdensome for a party sued to defend himself in a state
where he engages in economic activity." Id., quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220,
223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The court also found that Texas had a substantial interest
in adjudicating the matter because all but one of the injured members of the music band were
residents of Texas, and one of the companies was a Texas Company. Id. at 860. The evidence
showed that the defendant traveled to Texas six to eight times a year to meet musicians in Texas to
coordinate promotional events in Mexico. The court concluded that Texas had a strong "interest in
providing effective means of redress of its residents." Id., quoting McGee, 355 U.S. at 223, 78 S.Ct.
199.

 The burden on Zinc does not offend traditional notions of fair play and substantial justice. 
Just as in EMI, the distance between Monterrey, Mexico and El Paso, Texas is not sufficient to
defeat jurisdiction. Zinc admittedly sends a representative through Texas to New Mexico on a
regular basis. El Paso is served by the El Paso International Airport, and our sister city, Ciudad
Juarez, hosts an international airport as well. Moreover, Texas has a keen interest in maintaining
the safety of its roads and citizens. We should not be heard to say that every truck loaded in Mexico
and transported through Texas by a Mexican company faces the risk of in personam jurisdiction. 
Such an analysis is inherently fact specific. Here, however, Arrellano is a Texas resident who works
for a Texas company. The accident occurred in Texas on a Texas highway. Zinc regularly and
purposefully ships its products through Texas to New Mexico. Despite the specifications on the
purchase order that the shipping terms were "F.O.B. Mid-Bridge Laredo," thus contemplating
transfer of title in Nuevo Laredo, Mexico, Zinc's general manager pointedly testified that the load
at issue was delivered to the customs broker in Laredo, Texas and not in Nuevo Laredo, Mexico. 
We thus conclude that the exercise of jurisdiction over Zinc by a Texas court does not offend
traditional notions of fair play and substantial justice. We overrule Zinc's sole point and affirm the
judgment of the trial court.


July 31, 2009 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.

Carr, J., not participating

1. Because of the size and weight of the rolls, Zinc loads them onto a trailer using a specialized forklift loader. 
The rolls are then secured using specialized supports and inflatable pillows purchased and provided by Zinc to ensure
that the rolls do not shift during transport. This particular load weighed between 2.5 and 3 metric tons. Because the
paper is delicate and fragile, the rolls are to remain on the same trailer from the time of loading in Monterrey until they
are unloaded in New Mexico by the same specialized forklift owned by American Gypsum. 
2. During oral argument, we were advised that Zinc created a new product line specifically for American
Gypsum and that every roll of paper is unique pursuant to specifications. The round rolls of paper are contained in
square boxes and each load is sealed in Monterrey before transport.
3. Tex.Civ.Prac.&Rem.Code Ann. §§ 17.041-.045 (Vernon 2008).
4. There is a dispute as to whether Zinc actually transferred title mid-bridge or in the City of Laredo, Texas. 
During his deposition, Zinc's general manager distinguished between delivery to Laredo, Texas and delivery to Nuevo
Laredo, Mexico:


 A: The customary procedure is it's delivered to a customs agent, customs broker. In this case it was Juan
Alvarado Brokerage.


 Q: Are they in Nuevo Laredo or --


 A: No. They're in Laredo -- Laredo, Texas. And we deliver it to them.