

## NUMBER 13-07-00370-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

LIMITED LOGISTICS SERVICES, INC.,                                                    Appellant,

v.

CARLOS ROMERO VILLEGAS, ET AL.,                                                    Appellees.

---

### On appeal from the 206th District Court of Hidalgo County, Texas.

---

## O P I N I O N

### Before Chief Justice Valdez and Justices Garza and Vela
### Opinion by Chief Justice Valdez

This is an accelerated, interlocutory appeal from an order denying a special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp. 2007); TEX. R. CIV. P. 120a. Appellee, Carlos Romero Villegas, brought the underlying personal injury action against Rosemary Arredondo, individually and as an agent of Bath and Body Works, Bath and Body Works, Limited Brands, Inc., Special Distribution Services, and Limited Logistics Services, Inc. (hereinafter "Limited Logistics"). Appellant, Limited

Logistics, is the only defendant that filed a special appearance, which the trial court denied. By five issues, which may be properly categorized as three, Limited Logistics contends that the trial court erred in making certain evidentiary rulings and not dismissing the suit for want of jurisdiction. We affirm.

## I. BACKGROUND

Villegas and Gary Wayne Tutt were employed by Special Distribution Services, Inc., a Texas company, as truck drivers. On December 6, 2005, the two were delivering products to a Bath and Body Works store in McAllen, Texas. When they arrived at the store, Villegas exited the truck to help guide Tutt into a loading bay. Arredondo, a Bath and Body Works employee, supervised the delivery and talked to Villegas while Tutt was backing the truck and trailer into the loading bay. Somehow, Tutt lost sight of Villegas as he was backing up and pinned him between a wall and the trailer. Villegas sustained severe medical injuries in the accident.

On December 12, 2006, Villegas sued all of the aforementioned defendants for negligence.[1] In his December 2006 petition, Villegas's jurisdictional theory with regard to Limited Logistics was that Limited Brands, Bath and Body Works, Limited Logistics, and Special Distribution Services were engaged in a single business enterprise and therefore all defendants were amenable to jurisdiction in Texas because the contacts of Bath and Body Works, a McAllen store, and Special Distribution Services, a Texas trucking corporation, could be imputed to Limited Brands and Limited Logistics.[2]

On January 16, 2007, Limited Logistics filed a generic special appearance and an

---

[1] By a petition dated February 27, 2006, Villegas sued Tutt, Special Distribution Services, Arredondo, and Bath and Body Works. His December 12, 2006 amended petition added Limited Brands and Limited Logistics as defendants.

[2] Villegas has since settled his claims against Special Distribution Services.

affidavit by Kathleen Davies, an assistant secretary for Limited Logistics, which states that Limited Logistics does not maintain a place of business in Texas. On April 16, 2007, Villegas responded by arguing that Limited Logistics exercised sufficient control over Special Distribution Services to make it amenable to Texas jurisdiction through the single business enterprise theory and offered various print-outs of website pages evidencing the defendants' corporate structure.[3] According to the print-outs, Limited Brands, Inc. is the holding company that owns retail store chains, including Bath and Body Works.

Villegas also filed a carrier agreement that was executed by Limited Logistics and Special Distribution Services. The agreement spelled out the conditions, insurance limits, and personnel requirements that Special Distribution Services must be responsible for in order to be the shipper for Limited Logistics. Villegas's final piece of jurisdictional evidence was an expert report written by Whitney Morgan, a transportation expert. Morgan earned a bachelor of science degree in business administration with a major in transportation from the University of Tennessee in 1975 and had been employed as a special agent for the United States Department of Transportation. Morgan reviewed fifty-three documents, including the police report of the incident, deposition testimony from Tutt and Arredondo, and the agreement, and he concluded that Special Distribution Services had violated federal safety requirements. Morgan also opined that "Limited [Logistics] made no reasonable effort to enforce the [safety] obligations set forth in the Agreement."

On April 18, 2007, Villegas filed a second amended petition in which he alleged that Limited Logistics had negligently hired Special Distribution Services as an independent contractor. *See* TEX. R. CIV. P. 63. In his second amended petition, Villegas alleged that

---

[3] Limited Logistics objected to the admission of the print-outs on the ground that they were not timely filed; the trial court sustained its objection. They are contained, however, in the clerk's record and noted herein solely to orient the reader.

Tutt was an incompetent truck driver and that Special Distribution Services "knew or should have known" that it was employing an incompetent truck driver to haul its goods into Texas.

On April 23, a special appearance hearing was held. At the hearing, Limited Logistics objected to the admission of: (1) the contract on hearsay grounds; (2) Morgan's report on the grounds that it was not supported by personal knowledge and that it drew facts from hearsay; and (3) the print-outs that Villegas filed on April 18 because they were not timely filed. Limited Logistics, however, did not object to the timing of Villegas's filing of his second amended petition, nor did it amend its special appearance in response to Villegas's newly added claim of negligent hiring.

At the special appearance hearing, the trial court sustained the objection to the print-outs, overruled Limited Logistics' first two evidentiary objections, and orally denied Limited Logistics' special appearance. The trial court, however, did not sign a written order denying Limited Logistics' special appearance until April 30, 2007. The record does not contain an amended special appearance or any other pleading by Limited Logistics that responds to Villegas's claim of negligent hiring of an independent contractor. No findings of fact or conclusions of law were requested and none have been filed. This interlocutory appeal ensued.

## II. EVIDENTIARY RULINGS

By its first and second issues, Limited Logistics challenges the trial court's decision to admit the carrier agreement and Morgan's expert affidavit. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The trial court's evidentiary ruling will be upheld if there is any legitimate basis for the ruling. *Owens-Corning Fiberglass*

4

*Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Under an abuse of discretion review, an appellate court is not free to substitute its own judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

## A. The Carrier Agreement

In its second issue, Limited Logistics contends that the trial court erred in admitting the carrier agreement over its hearsay objection. Specifically, Limited Logistics argues that the carrier agreement constitutes inadmissible hearsay and that Villegas did not offer any proof as to the agreement's authenticity. We note, however, that at the special appearance hearing, Limited Logistic merely stated that, "[t]he objection is it's hearsay, it's not supported by any competent evidence." Clearly, Limited Logistics did not challenge the agreement's authenticity or raise any other objections to its admission; therefore, the authenticity argument is waived. *See* TEX. R. APP. P. 33.1(a).

Moreover, a party to a contract will not normally prevail on a hearsay objection to a contract because a signed instrument, such as a contract, that creates legal rights is not hearsay because it has legal effect independent of the truth of any statement contained in it. *See Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679, 685 (Tex. App.–El Paso 1989, writ denied) ("Statements that constitute offer, acceptance or terms of a contract—so-called "operative facts"—are not hearsay; the making of such statements are in themselves relevant and thus evidence that such statements were made is not barred by the hearsay rule."); *see also Kepner-Tregoe, Inc. v. Leadership Software Inc.*, 12 F.3d 527, 539-40 (5th Cir. 1994); *Sanders v. Worthington*, 382 S.W.2d 910, 915-16 (Tex. 1964).

5

In this case, Villegas offered the carrier agreement to demonstrate the existence of a legal relationship between Limited Logistics and Special Distribution Services. The carrier agreement appears to be signed by the director of Limited Logistics, and Limited Logistics did not properly challenge the agreement's authenticity. We conclude, therefore, that the trial court did not err in overruling Limited Logistics' hearsay objection. The second issue is overruled.

## B. Morgan's Affidavit and Expert Report

Villegas offered an affidavit and expert report drafted by Morgan, and the trial court admitted both over several objections. By its first issue, Limited Logistics contends that Morgan's affidavit and expert report were improperly admitted because they were not based on Morgan's personal knowledge.

In his report, Morgan stated that it was his expert opinion that Tutt was not qualified to operate a commercial truck because he had prior convictions for driving while intoxicated and possession of a controlled substance. Morgan's report also stated that:

> The [carrier agreement] between [Limited Logistics] and SDS [Special Distribution Services] contains language that demonstrates control by [Limited Logistics] over SDS pertaining to the hiring and retention of employees. The Agreement exercises substantially more control over a motor carrier by the shipper than is typical in the industry, including the right to audit the carrier's records. . .
>
>      . . . .
>
> Had [Limited Logistics] exercised [its right to review the backgrounds of Special Distribution Services's employees], [it] would have discovered that Mr. Tutt did not meet the provisions set forth therein and he would have been automatically disqualified.

In support of its first issue, Limited Logistics points us to authority pertaining to affidavits in a summary judgment context. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *see also* TEX. R. CIV. P. 166a(f) (requiring that "supporting and

6

opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Morgan's report, however, appears in the record as an "attachment" and purports to be an expert report.[4] Moreover, Limited Logistics does not explain why *expert reports* tendered at a special appearance hearing should be he held to the same standard as an *affidavit* presented at a summary judgment hearing. *See* TEX. R. APP. P. 38.1(h) (providing that the brief must contain a clear and concise argument for the contentions made).

Instead, the appropriate prism through which to review expert testimony is well settled. An expert witness may testify regarding "scientific, technical, or other specialized" matters if the expert is qualified and if the expert's opinion is relevant and based on a reliable foundation. TEX. R. EVID. 702; *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). Before the trial court, Limited Logistics neither assailed Morgan's "scientific, technical, or other specialized" knowledge nor challenged whether his testimony was relevant and based on a reliable foundation. Because Limited Logistics did not challenge these factors, we conclude that the trial court did not abuse its discretion in overruling Limited Logistics' objection. Limited Logistics' first issue is therefore overruled.

Having resolved the evidentiary challenges, we now turn to Limited Logistics' jurisdictional issue.

### III. PERSONAL JURISDICTION

By its third issue, Limited Logistics contends that the trial court erred in denying its

---

[4] Rule 120a(3) provides that, "[t]he court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits *and attachments as may be filed by the parties*, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3) (emphasis added).

special appearance because the trial court did not have specific jurisdiction over Villegas's claim. At the outset of our jurisdictional analysis we note that neither party contends that general jurisdiction is an issue in this appeal. Indeed, Villegas announced at oral argument that his claims rely solely on a specific jurisdiction theory. We will, therefore, discuss only specific jurisdiction, which is the only jurisdictional theory necessary to resolve this appeal. *See* TEX. R. APP. P. 47.1.

## A.      Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law subject to de novo review. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). As a general rule, the "plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *Id*. at 793. At that point, a "defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases." *Id*. To determine whether all jurisdictional bases were negated, we review all of the evidence relied upon by the parties regarding each respective special appearance hearing. *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 645 (Tex. App.–Fort Worth 2003, pet. denied). As in this case, when a trial court does not issue findings of fact and conclusions of law, we imply all facts necessary to support the judgment. *BMC Software*, 83 S.W.3d at 795.

## B.      Due Process & Personal Jurisdiction

*1.      The Texas Long-Arm Statute*

The Texas long-arm statute grants Texas courts jurisdiction over nonresident defendants doing business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). While the long-arm statute enumerates certain examples of doing business, it does not provide an exclusive list. *See id*.; *see also BMC Software*, 83 S.W.3d

8

at 795; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356-57 (Tex. 1990). The statute is construed as extending Texas courts' jurisdiction over nonresident defendants as far as the federal constitutional requirement of due process permits. *BMC Software*, 83 S.W.3d at 795.

*2. Minimum Contacts*

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A Texas court's personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with Texas; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "touchstone" of the minimum contacts analysis is purposeful availment; i.e., that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The purposeful availment analysis has three components. *See Michiana*, 168 S.W.3d at 785. First, the purposeful availment requirement ensures that a nonresident defendant's contacts with the forum state resulting from the unilateral activities of another party or a third person will not be the sole basis of haling that defendant into the jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Michiana*, 168 S.W.3d at 785. Thus, we look at only the defendant's contacts with the forum. *Michiana*, 168 S.W.3d at 785. Second, the contacts must be "purposeful" rather than random,

9

isolated, or fortuitous.  *Burger King*, 471 U.S. at 462; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Michiana*, 168 S.W.3d at 785.  Third, the defendant must have "availed" itself of the jurisdiction by seeking some benefit, advantage, or profit from the forum state so as to consent to suit there.  *Michiana*, 168 S.W.3d at 785.  Conversely, "a nonresident  may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction."  *Id*.

3.      *Specific Jurisdiction*

Specific jurisdiction exists when the defendant's alleged liability arises from or is related to an activity conducted within the forum.  *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

4.      *Traditional Notions of Fair Play and Substantial Justice*

The exercise of personal jurisdiction over a nonresident defendant must also comport with "traditional notions of fair play and substantial justice."  *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).  The burden is on the defendant to present a compelling case that the presence of some other considerations renders the exercise of jurisdiction unreasonable.  *Id.* at 231 (quoting *Burger King*, 471 U.S. at 477).  In making a determination, a court generally must look to the following factors: "(1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."  *Id*. at 231. "Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when [a] nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. at 231.

10

Furthermore, distance from the forum is generally not sufficient to defeat jurisdiction because the availability of "modern transportation and communication have made it less burdensome for a party sued to defend himself in a state where he engages in economic activity." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

## C.    Analysis

In his live petition, Villegas pleaded a claim for negligent hiring against Limited Logistics, a foreign corporation, by alleging that it hired Special Distribution Services, a Texas corporation, to deliver products to Texas when Limited Logistics:  (1) retained control over Special Distribution Services, and (2) "knew or should have known" that Special Distribution Services employed an incompetent driver.  *See* TEX. R. CIV. P. 63; *see also BMC Software*, 83 S.W.3d at 794 (providing that "plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute").

Villegas produced the carrier agreement as evidence that Limited Logistics retained some control over Special Distribution Services.  The carrier agreement provided, in relevant part, that:

> Carrier [Special Distribution Services] shall screen its own employees, agents, independent contractors and other Third Persons prior to handling Shipper's Goods, and shall remove from the roster any individuals who, as a result of their record (theft, drugs or violence automatically disqualifies), may, at the discretion of Shipper [Limited Logistics], represent a threat to the security of any of the Goods, or any other property of Shipper.  Shipper may request, and Carrier shall provide upon request of Shipper, copies of all background checks for all employees, agents and independent contractors or other Third Persons expected to be providing services on behalf of Carrier under this Agreement. . . . If Shipper notifies Carrier that any employee, agent, independent contractor of other Third Person of Carrier under contract with Carrier is not satisfactory to Shipper for any reason, then Carrier shall cease utilizing such individual in connection with services rendered hereunder on behalf of Carrier.

. . . .

Carrier must effect inside delivery or pickup for all store locations.

The record also contains Morgan's report, which states that Tutt was convicted for driving while intoxicated on June 23, 1987.  Morgan's report also stated that on October 7, 1993, Tutt was convicted on two felony counts of delivery and possession of a controlled substance.

Villegas was injured while Special Distribution Services' delivery truck was backing up to the loading bay of a Bath and Body Works store to make a delivery for Limited Logistics.  Moreover, Villegas was injured by Tutt, a driver who had, according to Morgan's report, a checkered past.  The location—including the store to which Limited Logistics directed Special Delivery Services' delivery—and the circumstances surrounding Villegas's injuries—including Tutt's qualifications and background—are the operative facts of the underlying suit.  *See Moki Mac River Expeditions*, 221 S.W.3d at 585.  We conclude that Villegas pleaded allegations which brought Limited Logistics within the long-arm statute of this state.  *See EMI Music Mexico, S.A. de C.V. v. Rodriguez*, 97 S.W.3d 847, 856-58 (Tex. App.–Corpus Christi 2003, no pet.) (finding that plaintiffs' pleadings and special appearance evidence provided sufficient jurisdictional allegations with respect to the plaintiffs' claim of negligent hiring arising from an automobile accident in Mexico).

It then became Limited Logistics' obligation to negate jurisdiction.  *BMC Software*, 83 S.W.3d at 793 (providing that a "defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases").  Limited Logistics' special appearance states that:

1. Defendant is not a resident of Texas.

2. Defendant does not engage and has not engaged in business in Texas,

nor committed any tort, in whole or in part, within the state.

3. Defendant does not maintain and has not maintained since the date of the incident made the basis of suit a place of business in Texas, and does not have any employees, officers, directors, or legal representatives within the state for purposes of conducting business in Texas.

4. Defendant maintains no bank accounts in the state, had no telephone listing in the state, keeps no books or records in the state and pays no taxes in the state.

5. Defendant does not solicit or advertise for business within the state of Texas.

The legal argument section of Limited Logistics special appearance states the general law regarding jurisdiction over out-of-state defendants; it does not speak to Villegas' negligent hiring claim.

On appeal, Limited Logistics argues that the carrier agreement does not establish, for jurisdictional purposes, a right of control, which is an element to a negligent hiring claim, because it did not control the "methods, means, or details" of in-store delivery. *See Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999). However, this argument was never made to the trial court in Limited Logistics' special appearance, at the special appearance hearing, or during the time between the special appearance hearing and when the written order was signed. It is, therefore, waived. *See* TEX. R. APP. P. 33.1; *Anchia v. DaimlerChrysler AG*, 230 S.W.3d 493, 500 n.1 (Tex. App.–Dallas 2007, pet. denied) (providing that special appearance issues not raised by an appellant to a trial court are waived on interlocutory appeal); *see also Michiana*, 168 S.W.3d 782 ("If all the evidence is filed with the clerk and only arguments by counsel are presented in open court, the appeal should be decided on the clerk's record alone."). We conclude that Limited Logistics failed to negate all jurisdictional bases. *See BMC Software*, 83 S.W.3d at 793.

Finally, we must determine whether the exercise of jurisdiction comports with

traditional notions of fair play and substantial justice. Here, Limited Logistics asserted in its special appearance that "[e]xercising jurisdiction over this Defendant's person and property would also violate traditional notions of fair play and substantial justice." It also asserted that "the exercise over this Defendant's person would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as the Texas Constitutional and long-arm statute." It did not provide further elaboration or evidence regarding these arguments. Additionally, it presented no evidence that it would be burdened by the exercise of jurisdiction in Texas. Accordingly, we find that the interest in adjudicating this case in Texas far outweighs the burden that Limited Logistics presented to the trial court. Limited Logistics third issue is overruled.

## D. Response to Dissent

The dissent writes that "Villegas seeks to hold LLS responsible for the alleged negligent actions of an unrelated entity and its employee, SDS and Tutt. In the absence of a specific act performed in Texas by LLS, its only burden was to negate its residency." This proposed holding is incorrect in two respects. First, we have already held that a foreign defendant is subject to jurisdiction in Texas on a negligent hiring claim if it directs an allegedly incompetent driver into this state, even if the accident occurs elsewhere. *Rodriguez*, 97 S.W.3d at 856-58. In this case, not only did Limited Logistics direct Special Distribution Services' trucks to Texas, but the accident also occurred here.

Second, the dissent totally ignores the fact that Limited Logistics' special appearance did not challenge the assertion of jurisdiction based on Villegas' negligent hiring claim. Instead, the dissent entertains Limited Logistics' untimely argument regarding the negligent hiring claim. We, however, are bound by our procedural rules and will not address waived arguments.

14

## IV. Conclusion

The trial court's order denying Limited Logistics' special appearance is affirmed.[5]

_____
ROGELIO VALDEZ
Chief Justice

Dissenting Opinion by Justice Vela.

Opinion delivered and filed
this the 27th day of August, 2008.

---

[5] Limited Logistics' motion to strike Villegas's brief is denied.