Opinion issued May 27, 2010.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00720-CV

———————————

Alicia Dianne West, Appellant

V.

SMG, Appellee



 



 

On Appeal from the 133rd District Court 

Harris County, Texas



Trial Court Case No. 0570124A

 



 

O P I N I O N

          Appellant,
Alicia D. West, sued SMG and six other defendants for negligence, gross
negligence, and negligence per se after she was injured at a concert at Reliant
Arena.  The trial court granted SMG’s
no-evidence motion for summary judgment. 
West appeals, arguing that (1) SMG owed her a duty of protection against
the harmful acts of a third party because it operated a venue for a public
event and retained exclusive control of security; (2) the trial court
erred in granting SMG’s no-evidence motion for summary judgment on negligence;
(3) the trial court erred in granting SMG’s no-evidence motion for summary
judgment on gross negligence; and (4) the trial court erred in denying West’s
motion for continuance.    

          We
affirm.

Background

          On
November 1, 2003, West attended a concert by the bands “A Perfect Circle” and
“The Icarus Line” at Reliant Arena in Houston, Texas.  The Icarus Line performed first.  During its performance, The Icarus Line (hereinafter
“the band”) was booed.  It retaliated by
spitting on the audience and subsequently by hurling water bottles into the
crowd.[1]  One of these bottles struck West on the side
of the head.  She fell to the concrete
floor and suffered injuries.  West
contends she is “permanently disabled and unable to work, drive, go to school or
care for herself.”  SMG operated the
Reliant Park for Harris County.  It
licensed Reliant Arena to Pace Concerts (Pace) for this concert, and, by
contract with Pace, it required the use of Contemporary Services Corporation
(CSC) for security for the concert.  

          On
November 1, 2005, West filed suit against the band, its individual members,
Clear Channel Communications, Inc., Clear Channel Entertainment-Exhibits, Inc., Pace Concerts, GP Inc.,
Contemporary Services Corporation, Inc., 
Hyatt Corporation, Inc., Aramark Corporation, Inc., and SMG. [2]  In her amended original petition, West
claimed that SMG’s negligence, gross negligence, and negligence per se in
failing to provide adequate security for the performance by The Icarus Line
caused her injury.  SMG denied all of West’s
claims.  

On July 31, 2006, SMG filed a
no-evidence motion for summary judgment, claiming that West had not produced
any evidence to indicate that SMG was negligent, grossly negligent, or
negligent per se.[3]  In its motion, SMG argued that (1) West could
not “demonstrate that there is any evidence to support her negligence cause”
because she “cannot put forth any evidence that . . . SMG owed [her] a legal
duty”; (2) West had not produced any evidence to support a showing of gross
negligence; and (3) there was no evidence that SMG had violated a statute, and
therefore there was no evidence for her claim for negligence per se.[4]  

West responded to SMG’s motion on
January 17, 2007, claiming that she had produced summary judgment evidence
sufficient to support her claims of negligence and gross negligence.[5]  Specifically, West argued that her summary judgment
exhibits showed that, because SMG through its contract with its agent CSC
retained control over security for the concert, SMG owed a duty to West to
protect her from harmful acts by the band, that SMG knew or should have known
that the band posed an unreasonable risk of harm, and that it failed to warn
her of the dangers or take action to increase security, and thus SMG is liable to
her for her injuries.  

West produced 12 exhibits as
evidence of her claims: (1) CSC’s employee handbook; (2) the incident report
generated from West’s injury; (3) the contract between SMG and CSC; (4) the
deposition of Richard A. Welsh, a branch manager for CSC; (5) the deposition
David A. Reed, CSC’s event manager for this concert; (6) an affidavit from
West; (7) an affidavit from West’s mother; (8) the “Artist Agreement Addendum”
between Pace and The Icarus Line; (9) the licensing agreement between SMG and
Pace that allowed Pace to put on the concert; (10) the “Artist Agreement
Addendum” between Pace and “A Perfect Circle,” the band that performed after
“The Icarus Line”; (11) the deposition of Gerald L. Eversole, in-house counsel
for SMG; and (12) an affidavit from Jon W. Wanger, one of West’s attorneys,
that consists principally of materials downloaded from the band’s website.

In her response, West also filed a
motion for a continuance, arguing that the trial court should not rule on SMG’s
no-evidence motion for summary judgment until she could depose Efrem Faulkner,
the CSC employee who drafted the incident report and who was, at that time
discovery was being conducted, serving with the United States military
overseas.  She stated that she
anticipated that Faulkner would testify based on his “particular knowledge and
observations of the events, actions, and inactions that took place prior to and
during the event at Reliant Arena when Plaintiff was injured.”  The motion was not verified.

The trial court heard oral argument
on SMG’s no-evidence motion for summary judgment on January 29, 2007, but it
did not enter judgment at that time.  On
March 31, 2008, the trial court held a status conference and set SMG’s
no-evidence motion for summary judgment for final submission on April 14,
2008.  On April 7, 2008, West filed a
motion requesting another continuance on the trial court’s ruling on SMG’s
motions for summary judgment.  In this
motion, she contended that she needed the continuance so that she could depose
an additional eight witnesses, who, she contended, would testify that SMG was
negligent in failing to establish regulations and to train employees to protect
the audience members from “attacks by performers.”  Faulkner was not among those she proposed to
depose.  SMG objected to West’s request
for a continuance.  It based its
objection on the fact that West had already had 29 months to depose those
witnesses but had not made any prior request to do so.[6]  The trial court denied West’s request for
more time for discovery.  It granted
SMG’s no-evidence motion for summary judgment on May 21, 2008.

On June 5, 2008, SMG filed a motion
to sever.  On that same day, West filed a
motion asking the trial court to reconsider its decision to grant SMG’s
no-evidence motion for summary judgment, and, without leave of court, she
amended her petition, adding new claims under the Deceptive Trade Practices
Act.  On July 25, 2008, the trial court
granted SMG’s motion to sever.  West then
filed an objection to the trial court’s failure to rule on West’s motions for
continuance and her amended petition.  SMG
responded, arguing that the trial court’s grant of summary judgment for SMG
implicitly denied West’s motion for continuance.

On August 18, 2008, West filed a
notice of appeal of the trial court’s no- evidence summary judgment on her
negligence and gross negligence claims and its denial of a continuance.

Finality of Judgment

As a jurisdictional threshold
matter, we first address the finality of the judgment in favor of SMG. See Waco Indep. School Dist. v. Gibson,
22 S.W.3d 849, 853 (Tex. 2000) (stating that appellant courts may raise subject-matter
jurisdiction sua sponte).  On July 25,
2008, the trial court granted SMG’s motion to sever “all of plaintiff’s claims
and causes of action brought against SMG” and assigned the severed claims a new
cause number.  On August 18, 2008, West
filed an objection to the trial court’s failure to rule on her motions for
continuance and on her amended petition, arguing that the failure to grant the
continuance and to rule on the live pleading was error and therefore the
summary judgment was not final.  SMG’s response
correctly pointed out that the order granting SMG’s motion for summary judgment
impliedly denied West’s motion for continuance. See Carter v. MacFadyen, 93 S.W.3d 307, 310 n.2 (Tex. App.—Houston
[14th Dist.] 2002, pet. denied).  It also
correctly pointed out that the trial court need not rule on an amended petition
filed after the entry of summary judgment. 
See Taylor v. Sunbelt Mgmt., Inc., 905 S.W.2d 743, 745 (Tex.
App.—Houston [14th Dist.] 1995, no writ); Nguyen
v. JP Morgan Chase Bank, No. 14-07-00086-CV, 2008 WL 2130430, at *3 (Tex.
App.—Houston [14th Dist.] May 22, 2008, no pet.) (mem. op.).  

We conclude that the summary
judgment in favor of SMG denied all relief not granted by the judgment and was
final as to all of West’s claims against SMG. 
Therefore, we do have jurisdiction in this appeal over all of West’s
claims as to SMG.

No-Evidence Summary Judgment

A.              
Standard of Review

We review grants of summary
judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).
A no-evidence motion for summary judgment must be granted if, after adequate
time for discovery has passed, the moving party asserts that there is no
evidence of one or more specified elements of a claim or a defense on which the
adverse party would have the burden of proof at trial and the respondent
produces no summary judgment evidence raising a genuine issue of material fact
on those elements.  Tex. R. Civ. P. 166(a)(i); LMB, Ltd. v. Moreno, 201 S.W.3d 686, 688
(Tex. 2006).

          Essentially,
a party that files a no-evidence summary judgment motion has moved for a
pretrial directed verdict.  Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 581 (Tex. 2006).  When the movant
files its motion in proper form, the burden shifts to the nonmovant to defeat
the motion by presenting evidence that raises an issue of material fact
regarding the elements challenged in the motion.  Id.
at 582.  We review the evidence presented
by the summary judgment record in the light most favorable to the party against
whom the summary judgment was rendered, crediting evidence favorable to that
party if reasonable jurors could and disregarding contrary evidence unless
reasonable jurors could not. Id.
(citing City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005)).  The
evidence produced must amount to more than a scintilla in order to raise a
genuine issue of material fact.  Madison v. Williamson, 241 S.W.3d 145,
151 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  Evidence amounts to more than a scintilla if it
enables reasonable and fair-minded people to differ in the conclusions to be
drawn from it.  See id. at 151–52.  Evidence
fails the scintilla test if it gives rise only to surmise or suspicion about
the fact to be proven.  See id. at 152.  

          When,
as here, a summary judgment does not specify the grounds on which it was
granted, the appealing party must demonstrate that none of the proposed grounds
is sufficient to support the judgment.  Rogers v. Ricane Enters., 772 S.W.2d 76,
79 (Tex. 1989); Tilotta v. Goodall,
752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ denied).  Conversely, we will affirm the judgment if
any one of the theories advanced in the motion is meritorious.  Joe v.
Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

 

B.              
Liability of Premises Owner for Harmful Acts of Third Parties

In her first three issues, West
argues that the trial court erred in granting SMG’s no-evidence motion for
summary judgment because (1) SMG operated a public venue and retained exclusive
control of security for the event and, therefore, it owed her a duty of
ordinary care; (2) she presented summary judgment evidence supporting each of
the elements of her negligence claim; and (3) she presented summary judgment
evidence supporting her gross negligence claim. 

A showing of negligence requires a
plaintiff to establish three elements: (1) a legal duty owed by the
defendant to the plaintiff; (2) a breach of that duty; and (3) damages
proximately resulting from the breach.  W. Inv., Inc. v. Urena, 162 S.W.3d 547,
550 (Tex. 2005); Greater Houston Transp.
Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  Duty is a threshold question in a negligence
case.  Id.  Whether a duty exists is
a question of law for the court to decide from the facts surrounding the
occurrence in question.  Id. 
If the trial court determines that there is no duty, the inquiry
regarding negligence ends.  See Van Horn v. Chambers, 970 S.W.2d
542, 544 (Tex. 1988).

“A complaint that a landowner
failed to provide adequate security against criminal conduct is ordinarily a
premises liability claim.” Timberwalk
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998).  “Premises liability is a special form of
negligence where the duty owed to the plaintiff depends upon the status of the
plaintiff at the time the incident occurred.” W. Inv., Inc., 162 S.W.3d at 550. 
In the case of an invitee, such as West, a premises liability inquiry
focuses on whether the defendant proximately caused the plaintiff’s injuries
“by failing to use ordinary care to reduce or eliminate an unreasonable risk of
harm created by a premises condition that it knew about or should have known
about.” Id.  By contrast, “[r]ecovery on a negligent
activity theory requires injury by or as a contemporaneous result of the
activity itself—not a
condition created by the activity.”  Mayer v. Willowbrook Plaza Ltd., 278
S.W.3d, 901, 909 (Tex. App—Houston [1st
Dist.] 2009, no pet.) (citing Timberwalk,
972 S.W.2d at 753; Keetch v. Kroger Co.,
845 S.W.2d 262, 264 (Tex. 1992)). 
Negligence and premises liability are independent theories of recovery,
and the Texas Supreme Court has held, “We have rejected attempts to blur the
distinctions between [negligence and premises liability] claims.”  State
v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006); Clayton W. Williams, Jr.,
Inc. v. Olivo, 952 S.W.2d 523, 529 (Tex. 1997).  

1.    
Duty of Premises Owner to Protect Against Assaultive
Acts of Third Parties

 

Here, as in Timberwalk, West contends that SMG’s failure to provide adequate
security measures created an unreasonable risk of harm from the band’s assaultive
conduct that SMG knew or should have known about and failed to correct. This is
a premises liability claim predicated on SMG’s duty to provide security for the
concert adequate to protect West from the band’s assault on attendees. 

Generally, there is no legal duty
to protect another from a third person’s criminal acts.  Timberwalk,
972 S.W.2d at 756.  However, when one
controls the premises, he has a duty to use ordinary care to protect invitees
from “criminal acts of third parties if he knows or has reason to know of an
unreasonable and foreseeable risk of harm to the invitee.”  Id.
(quoting Lefmark Mgmt. Co. v. Old,
946 S.W.2d 52, 53 (Tex. 1997)); see also
Del Lago Partners, Inc. v. Smith, No. 06-1022, 2010 WL 1253977, at *4 (Tex.
Apr. 2, 2010).  This exception applies to
a landlord who retains control over the security and safety of the
premises.  Del Lago Partners, 2010 WL 1253977, at *4; Timberwalk, 972 S.W.2d at 756. 
This duty developed from the notion that the party with the power to
control expulsion is in the best position to protect against harm.  Del
Lago Partners, Inc., v. Smith, 206 S.W.3d 146, 153 (Tex. App.—Waco 2006), aff’d, 2010 WL 1253977 (Tex. Apr. 2,
2010).  

A duty of a person who owns or
controls property to protect persons on the property from the risk of criminal
conduct exists, however, only when the risk is so great that it is both
unreasonable and foreseeable.  Timberwalk, 972 S.W.2d at 756.  “The foreseeability of an unreasonable risk
of criminal conduct is a prerequisite to imposing a duty of care on a person
who owns or controls premises to protect others on the property from the
risk.”  Id.  Once this prerequisite
has been satisfied, the parameters of the duty must be determined.  Id.  Foreseeability is the beginning of the
determination of the extent of the duty to protect against a third party’s
criminal acts.  Id.  “Whether such [a] risk
was foreseeable must not be determined in hindsight but rather in light of what
the premises owner knew or should have known before the criminal act occurred.”
Id. 
at 757.  “Foreseeability requires
only that the general danger, not the exact sequence of events that produced
the harm, be foreseeable.”  Id. at 756 (quoting Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996)).  

“When the ‘general danger’ is the
risk of injury from criminal activity, the evidence must reveal ‘specific
previous crimes on or near the premises’ in order to establish
foreseeability.”  Timberwalk, 972 S.W.2d at 756 (quoting Walker, 924 S.W.2d at 377). 
Factors a court should consider when determining whether third party
criminal conduct was foreseeable include: (1) whether any criminal conduct
previously occurred on or near the property; (2) how recently such conduct
occurred; (3) how often such conduct occurred; (4) how similar the prior
conduct was to the conduct that occurred on the property; and (5) what publicity
surrounded the occurrences to indicate that the land owner/occupier knew or
should have known about them.  Id. at 757.

In addition, the Texas Supreme
Court has recently held, in Del Lago
Partners, that a property owner and operator with actual and direct knowledge
that violence is imminent has a duty to protect an invitee from imminent
assaultive conduct by a fellow patron. 
2010 WL 1253977, at *5  (finding
nature and character of bar at closing time after ninety minutes of heated
altercation between intoxicated patrons to be factor in foreseeability of
assaultive behavior by patrons).  The
court recognized that the nature and character of the premises can be a “factor
that makes criminal activity more foreseeable.” 
Id. at *4. More specifically,
it recognized that criminal conduct may become foreseeable because of
immediately preceding conduct.  Id. 
The court reasoned that “since the landowner ‘is not an insurer of the
visitor’s safety, he is ordinarily under no duty to exercise any care until he
knows or has reason to know that the acts of the third person are occurring or are about to occur.’”  Id.
at *5 (quoting Restatement (Second) of
Torts § 344 cmt. f
(1965)) (emphasis added in Del Lago).  However, “[i]n certain situations . . . the
actor may have sufficient knowledge of the immediate
circumstances . . . to foresee that party’s misconduct.”  Id.
(quoting Restatement (Third) of Torts § 19 cmt. f
(2010)) (emphasis added in Del Lago).  The court concluded that “when a property
owner ‘by reason of location, mode of doing business, or observation or past
experience should reasonably anticipate criminal conduct on the part of third
persons, . . . [the owner] has a duty to take precautions against it.’”  Id.  

West contends that SMG knew or
should have known when it required Pace to hire CSC to provide security for the
concert that members of the band would foreseeably commit an intentional act of
assault while performing at Reliant Park that would require additional measures
to be in place to protect invitees.  West
also contends that SMG controlled the means and details of CSC’s security for
the concert, and, in that capacity, it had a duty to provide adequate security
for concert-goers, and thus it had a duty to require CSC to increase security
as assaultive conduct by the band became imminent.  

West states that SMG should have
foreseen the band’s bottle throwing because CSC’s employee handbook instructed
its employees that they should “not allow guests to throw any type of
projectile” and “[w]hen an object goes into the seating area you must go and
check on the guest to see if they need medical attention.”  She also points to the contract between Pace
and the other band that performed that night, A Perfect Circle, which required
that “all beverages sold in venue be poured into cups. No bottles, plastic or
other should be allowed into the hands of patrons.”  West directs us to a deposition by Richard
Welsh, the CSC branch manager, who testified that he had “seen water bottles
thrown from the stage of rock concerts a few times.” She also directs us to a
deposition by David Reed, a member of CSC’s security team, in which he
testified that, during the band’s performance, he “witnessed the lead singer
toss a bottle. He had been tossing bottles of water into the audience.  And I called the security manager of the show
to decide and said, ‘look this has got to stop.’” Finally, she directs us to a
statement on the band’s website in 2004: “Approach at your own risk, for there
is always a chance of having a limb or an organ picked at in the shuffle of it
all.”  The incident made the basis of
this suit, however, occurred in 2003, before the date of the statement on the
website. 

None of this evidence amounts to
more than a scintilla of evidence that SMG knew or should have known when it
signed the contract with Pace requiring CSC to be hired to provide security
that extra security measures would be required to protect invitees from the assaultive
acts of the band.  The summary judgment
evidence cited by West is no evidence: (1) that water bottles had previously
been thrown into the crowds by performers at Reliant Park; (2) that assaults by
performers on invitees had occurred at Reliant Park in close temporal proximity
to the events complained of; (3) that such conduct was frequent; (4) that it
was similar to that which occurred; or (5) that SMG knew or should have known
of any publicity surrounding assaultive behavior by the band from which it was
foreseeable that the band would assault the crowd.   See
Timberwalk, 972 S.W.2d at 757.  We conclude that, as a matter of law, West
has failed to provide evidence of the foreseeability of the band’s criminal
actions that would impose upon SMG a duty to take extra security precautions in
advance of the concert to protect attendees beyond requiring Pace to hire
CSC.  

2.    
Responsibility of Premises Owner for Negligence of
Agent in Failing to Provide Security

 

West also contends that SMG
exercised control over the means and details by which CSC provided security at
concerts at Reliant Arena.  She contends
that, although SMG subcontracted security during the concert to CSC, it
retained control over the means and details of CSC’s provision of security
during the concert, and, therefore, SMG was a principal and CSC was its agent
rather than an independent contractor. 
She argues that CSC, as an agent for SMG, was acting within the scope of
the general authority given by SMG and under its direction and had a duty to
increase security to protect invitees from the band’s assaultive conduct, which
was foreseeable under the circumstances, that CSC breached its duty, and
therefore liability can be imputed to SMG, as CSC’s principal.  

Generally, the individual or entity
that hires an independent contractor is not vicariously liable for a tort or an
act of negligence committed by the independent contractor.  Baptist
Mem’l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947–48 (Tex. 1998) (citing Enserch Corp. v. Parker, 794 S.W.2d 2, 6 (Tex. 1990)).  However, when the hiring entity retains
control over the specific details and methods by which the task is to be
accomplished, the independent contractor acts as an agent and the individual or
entity that hired the contractor can be held to be vicariously liable for the
torts or negligent acts of the agent.  Id. 
By contrast, when one has the right to control the end sought to be
accomplished, but not the means and details of how it should be accomplished,
the person employed acts as an independent contractor, and not as an agent, and
the person or entity that hired the contractor is not liable for the
contractor’s negligent acts.  See Olympia Capital Assocs. v. Jackson,
247 S.W.3d 399, 413 (Tex. App.—Dallas 2008, no pet.); Ltd. Logistics Servs., Inc. v. Villegas, 268 S.W.3d 141, 153 (Tex.
App.—Corpus Christi 2008, no pet.); see
also Walker Ins. Servs. v. Bottle Rock Power Corp., 108 S.W.3d 538, 549
(Tex. App.—Houston [14th Dist.] 2003, no pet.). 


In an attempt to establish SMG’s
control over the means and details of the provision of security at Reliant
Park, West points to the contract between SMG and its co-defendant Pace, the
entity that promoted the concert at issue, which required Pace to hire
CSC.  She also cites to a portion of a
paragraph of Paragraph F of the Reliant Park General Rules and Regulations,
which in its entirety states:

The Facility retains exclusive Electrical, Food & Beverage Services, Security, Medical, Ticket, Office, Event
Staff and Housekeeping contractors and it
is mandatory that the Licensee and Licensee’s exhibitors and/or attendees obtain the Services of these contractors
exclusively as required in conducting your/their business in the Facility.

 

(Emphasis added). 
CSC was the security contractor to which the contract referred.

The fact that SMG required Pace to
hire CSC merely establishes, however, that CSC was the exclusive contractor for
security services at Reliant.  It does
not establish that SMG retained exclusive control over the details and manner
of security CSC provided at Reliant during the band’s concert.  Thus, this is no evidence that CSC was the
agent of SMG in responding to security needs that arose on-site, as necessary
to establish SMG’s liability for any act or omission of CSC personnel present
at the concert.  

West also points to the CSC
employee manual, which instructed CSC employees, “No guest shall be ejected
from the venue for minor infractions of policies WITHOUT ADEQUATE WARNING and
CSC and/or SMG management approval. 
Should you the need [sic]
arise to eject a guest, please notify your supervisor.  Again, CSC and SMG management are the final
decision makers regarding an ejection.”  This
passage in CSC’s employee manual to
its security personnel is, also, however, no evidence that SMG actually exercised control over the ejection of guests “for
minor infractions of policies,” much less exercised control over CSC’s response
to emergency situations.  In particular,
it is no evidence that CSC actually looked to SMG during the band’s concert to
instruct it how to control the escalating assaultive conduct of the band, whose
members were not “guests” whom security personnel had decided to eject for
minor infractions of policies.

Finally, as evidence of on-site
control over the details and means of CSC’s provision of security, West refers
us to the deposition testimony by CSC’s branch manager Welsh that, in advance
of an event, SMG would meet with CSC and “tell us how many ticket-takers they
want, how many ushers they want and how many on-staff security they want.”  She also points us to the deposition testimony
of Reed, a member of CSC’s security team and the event manager for the concert
who was responsible for controlling the crowd that, in fact, such a meeting
took place before this event with SMG’s event coordinator, CSC’s event
coordinator, and the security managers for the bands.

Reed also testified that during the
band’s performance he received a call over his radio “that a person was down on
the floor” and a call from his CSC supervisor, Efrem Faulkner, who was on the
floor “getting the information on the incident that had happened.”  He was told West had been hit by a bottle of
water from the stage area.  He did not
know of any other incidents that occurred that evening.  However, he witnessed the lead singer of the
band toss a bottle.  “He had been tossing
bottles of water into the audience.” 
Reed called the security manager for the band and stated, “Look this has
got to stop,” just before he was informed by Faulkner that West had been hit.  He testified that up until that point he had
not had a problem with the crowd.  Again,
however, none of this is evidence that SMG
controlled the details of the provision of security on-site during the
performance.  

3.    
Duty of Premises Owner with Actual and Direct
Knowledge of Imminent Harm to Require Increased Security

 

Finally, there is no evidence that
SMG “had actual and direct knowledge” that a violent assault on the
concert-goers by the band was imminent, as required to hold a premises owner
liable for the violent acts of third parties on invitees.  See Del
Lago Partners, 2010 WL 1253977, at *5.  All of the evidence cited goes to CSC’s
on-site control over the means and details of security and CSC’s knowledge of
the band’s conduct.  There is no evidence
that this knowledge was communicated to SMG or that there was even time to
communicate it or that it had been communicated, SMG would have had the
responsibility to direct CSC as to how to proceed. 

The situation in this case is
wholly unlike that in Del Lago Partners.  In that case, the evidence showed that Del
Lago both staffed its bar and provided its own security.  2010 WL 1253977, at *1.  Del Lago’s staff continued to serve drinks to
drunk patrons during “ninety minutes of yelling, threatening, cursing, and
shoving” between them without calling security until after the fight started.  Id.
at *2.  Del Lago’s security employees, in
turn, while aware that the bar was crowded, failed to visit it during the
entire ninety minutes, although they customarily visited the bar five to eight
times a night and had ejected a drunk fraternity member the night before.  Id.
at *6.  

The supreme court concluded that
the jury could have found that Del Lago bar staffers were fully aware of the
events transpiring in the bar and nevertheless unreasonably neglected to notify
security or to bring the situation under control and that the bar staffers were
not provided the training and information to call security.  Id.
at *7.  The court also concluded that the
jury could also have found that Del Lago acted unreasonably in failing to
provide a “security presence at closing.”  Id. 
By contrast, there is no evidence in the instant case that SMG employees
had actual and direct knowledge that assaultive conduct was imminent, or that
any SMG personnel acted negligently in unreasonably failing to respond the band’s
assaultive conduct or to require CSC personnel to do so.  

We hold that West has failed to
show that SMG knew or should have known when it required Pace to hire CSC of
foreseeable assaultive acts by the band or others that would require extra
security to protect concert-goers.  Nor
has West shown that SMG controlled the means and details of CSC’s provision of
security for the concert on-site during the performance and had actual and
direct knowledge that assaultive conduct by the band against concert-goers was
imminent and that increased security was required.  We hold therefore, that, as a matter of law,
SMG had no legal duty to protect West from the band’s assaultive acts.  Because West has failed to bring forth
sufficient evidence on the element of duty, a necessary element of her
negligence and gross negligence claims, we further hold that the trial court
did not abuse its discretion in granting SMG’s motion for summary judgment.

We overrule West’s first, second,
and third issues.  

Failure to Grant Continuance

          In
her fourth issue, West contends that the trial court erred in granting SMG’s
motion for summary judgment without ruling on her motion for a continuance to
allow her to depose Faulkner, the security supervisor for CSC responsible for
the area in which West was seated.  West
contends that she could not depose Faulkner because he had been deployed by the
United States Military.  West filed her
motion for continuance on January 17, 2007, and the trial court impliedly
overruled it by not ruling on her motion and granting SMG’s no-evidence summary
judgment.

A trial court may order a
continuance of a summary judgment hearing if it “appears from the affidavits of
the party opposing the motion [for summary judgment] that he cannot for reasons
stated present by affidavit facts essential to justify his opposition.”  Joe,
145 S.W.3d at 161.  A trial court’s
denial of a motion for continuance and its determination that there has been
adequate time for discovery are reviewed under an abuse of discretion
standard.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex.
2002) (stating that denial of motion for continuance is reviewed for abuse of
discretion standard); Rest. Teams Int’l,
Inc. v. MG Sec. Corp., 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.)
(stating that trial court’s determination that there has been adequate time for
discovery is reviewed for abuse of discretion). 
A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner “without reference to any guiding rules or principles.”  See
Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).  

“When a party contends that it has
not had an adequate opportunity for discovery before a summary judgment
hearing, it must file either an affidavit explaining the need for further
discovery or a verified motion for continuance.” See Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647
(Tex.1996); see also Tex. R. Civ. P. 166a(g), 251, 252. The
affidavit or motion must describe the evidence sought, state with particularity
the diligence used to obtain the evidence, and explain why the continuance is
necessary. Rocha v. Faltys, 69 S.W.3d
315, 319 (Tex. App.—Austin
2002, no pet.). If these requirements are met, three non-exclusive factors are
considered in determining the propriety of a trial court’s ruling on a motion
for continuance: (1) the length of time the case has been on file; (2) the
materiality and purpose of the discovery sought; and (3) whether the party
seeking the continuance has exercised due diligence to obtain the discovery sought.
Joe, 145 S.W.3d at 161.  While no bright line rule exists regarding
the length of time a case has been on file and the propriety of denying a
motion for continuance, Texas courts have overruled such motions in cases on
file for fewer than nine months.  See Rest. Teams Int’l, 95 S.W.3d at 339–40.

          West
filed a motion for continuance on the trial court’s ruling on SMG’s motion for
summary judgment on January 17, 2007, seeking to depose Efrem Faulkner, a CSC
employee.  West’s motion principally
contended that Faulkner “has particular knowledge and observations of the
events, actions, and inactions that took place prior to and during the event at
Reliant Arena when Plaintiff was injured.” 


West’s case had been on file for a
year and a half, since November 2005, when she filed her motion for
continuance.  Although the trial court
heard oral argument on SMG’s motion for summary judgment on January 29, 2007,
without granting the continuance, the court did not deem the motion for summary
judgment finally submitted until April 14, 2008—14 months after SMG filed it and 29 months after West filed suit—and did not grant summary judgment until May
21, 2008.  During this time, there is no
evidence that West made any attempt to depose Faulkner.  Rather, undermining her own argument, she
abandoned that continuance and, instead, on April 7, 2008, filed a second
motion for continuance, seeking seven other depositions, just one week before
the motion for summary judgment was set for final submission.  By the time of final submission of SMG’s
summary judgment motion, West’s case had been on file for 29 months.   Her motions for continuance provided no
information regarding any efforts she had made to secure any of the depositions
requested in a timely manner.  Nor does
the record contain any reference to the particular knowledge and observations
of knowledge Faulkner or the other persons for whose deposition a continuance
was requested that would have supplied proof of the elements of West’s
negligence claims against SMG that West was unable to produce otherwise.  We conclude that West failed to satisfy the
factors that would have justified a continuance.  See
Rocha, 69 S.W.3d at 319; Joe, 145
S.W.3d at 161.

          We
hold that the trial court did not abuse its discretion in denying West’s motion
for continuance.  We overrule West’s
fourth issue.

CONCLUSION

          We
affirm the judgment of the trial court.

          

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

 

 











[1]               West contends the water
bottles contained ice, not liquid water.

 





[2]
              SMG
is the successor entity to LMI/HHI, Ltd., the firm that managed Reliant Park at
the time of the concert.  Like the
parties, we refer to SMG and not LMI/HHI.

 





[3]           “Negligence
per se is a common-law doctrine that allows courts to rely on a penal statute
to define a reasonably prudent person’s standard of care.”  Reeder
v. Daniel, 61 S.W.3d 359, 361–62
(Tex. 2001).  

 





[4]           SMG
also filed a traditional motion for summary judgment asserting the same
claims.  The trial court did not rule on
it, and West appeals only the trial court’s ruling on the no-evidence summary
judgment.

 





[5]
              West’s response did not address her claim of
negligence per se and she has not brought forth that issue on appeal.





[6]
              West
contended that she sent SMG a letter requesting depositions of these newly
identified people on March 6, 2008.  SMG
claimed it never received the letter.